NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DAVID MCFADDEN, *Appellant.*

No. 1 CA-CR 16-0264
FILED 7-25-2017

Appeal from the Superior Court in Maricopa County
No. CR2015-002912-001 DT
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Lawrence Blieden
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Randall M. Howe joined.

**W I N T H R O P**, Presiding Judge:

¶1        David McFadden ("Appellant") appeals his convictions and sentences for two counts of aggravated assault.  Appellant argues the trial court abused its discretion in granting the State's motion in limine to preclude two 911 calls made before the assaults were committed.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

¶2        At approximately 2:30 a.m. on May 27, 2015, Phoenix police officers responded to an anonymous report of a fight between two persons—one of whom reportedly had a gun—in the parking lot of an apartment complex.  J.H., who lived at the complex and worked as its maintenance man, was awakened and stepped outside to observe.  He was accompanied by his seventeen-year-old daughter, L.V.  J.H. saw numerous people who had been partying standing in the parking lot and near Apartments 13 and 14.[2]  The police eventually left after they were unable to locate any victims or witnesses to the reported fight.

¶3        After the police left, Hardins, one of the tenants in Apartment 13, began screaming at L.V., calling her a "snitch" and shouting invectives and threats because Hardins mistakenly believed either J.H. or L.V. had called the police.  Soon after, J.H. saw Appellant approaching quickly toward J.H.'s apartment.  J.H. turned to enter his apartment, but took only a few steps before Appellant punched him in the back-left side of his head.  J.H. fell and briefly lost consciousness while Appellant continued to strike J.H. while he was on the ground.  L.V. attempted to push or pull Appellant away from J.H., but Appellant began punching L.V. in the face.  J.H.

---

[1]        We view the facts in the light most favorable to sustaining the verdicts and resolve all reasonable inferences against Appellant.  *See State v. Kiper*, 181 Ariz. 62, 64, 887 P.2d 592, 594 (App. 1994).

[2]        According to Appellant's witnesses, Apartment 13 was occupied by its three tenants—Shakyra Hardins, Cashe Almeda, and Layshonquie Miller—as well as Dominique Brown (Hardins' live-in boyfriend and the father of her children), Appellant (the uncle of Hardins and Almeda, who were sisters), and several children.  However, people from Apartments 13 and 14 were "intermixing and kind of going back and forth" between the apartments.

eventually stood up, pulled L.V. inside their apartment, and called 911.[3]
Both victims described their attacker as a Black male wearing a gray muscle
shirt and black or dark jeans, with tattoos on both arms.

¶4            Within minutes, Phoenix police officers returned to the
apartment complex. J.H. and L.V. described their attacker to police, and
surmised that Appellant had come from Apartment 13 and attacked them
as "retaliation" for the earlier 911 call. Phoenix Police Officer Albrand went
to Apartment 13, spoke with the individuals inside, and observed that
Appellant—the only male in the apartment—matched the victims'
description of their attacker. Officer Albrand handcuffed and escorted
Appellant to his patrol car.

¶5            At the patrol car, each victim separately identified Appellant
as the person who assaulted them. Each victim also expressed one
"hundred percent" confidence in his/her identification.[4] The State charged
Appellant with two counts of aggravated assault, each a class four felony.

¶6            At trial, Appellant presented a misidentification/third-party
culpability defense: Almeda and Miller testified that Dominique Brown,
rather than Appellant, had attacked the victims. Almeda and Miller
claimed Brown (1) was at their apartment on the night of the assaults, (2)
became angry and "called the police on the police" after officers responded
to the first anonymous 911 call, and (3) attacked the victims because he
believed they had placed the first 911 call. Almeda and Miller also testified
that Brown was dressed much the same as Appellant that night, and that
Brown looked like Appellant—even though Brown had tattoos on only one
arm and was approximately fourteen years younger than Appellant.[5]

---

[3]      J.H. suffered a severed left earlobe and bruises to his back and neck.
L.V. suffered an acute head injury, a broken nose, a scratch on her face, and
bruises.

[4]      At trial, both victims testified they were familiar with Appellant and
easily recognized him because they had previously seen, met, and spoken
with him.

[5]      Almeda and Miller further testified the police initially arrested and
handcuffed Brown, but after Brown briefly escaped, ran back to Apartment
13 to inform Hardins he was being arrested, and was pursued and caught
by officers, the officers inexplicably changed their minds, released Brown,

**¶7** On rebuttal, however, J.H. testified that Appellant, not Brown, had attacked the victims. J.H. explained that not only did Brown not look like Appellant, but he knew Brown's appearance because he had met Brown several times while performing maintenance in Apartment 13, and had seen Brown almost daily when Brown was living in that apartment.

**¶8** The jury found Appellant guilty as charged. The trial court sentenced Appellant to concurrent, presumptive terms of ten years' imprisonment in the Arizona Department of Corrections.

**¶9** We have jurisdiction over Appellant's timely appeal. *See* Ariz. Const. art. 6, § 9; Ariz. Rev. Stat. §§ 12–120.21(A)(1) (2016), 13–4031 (2010), 13–4033(A) (2010).

## ANALYSIS

**¶10** Appellant argues the trial court abused its discretion in granting the State's motion in limine to preclude the tapes of two 911 calls made before the victims were assaulted.[6] The first call came from an unidentified female who reported the initial incident in the parking lot, and the second call came from a person identifying himself only as "Dominique," who claimed he was being harassed by police and demanded additional police come and arrest the officers already present.

**¶11** In general, we review the trial court's evidentiary rulings for an abuse of discretion. *State v. Blakley*, 204 Ariz. 429, 437, ¶ 34, 65 P.3d 77, 85 (2003); *State v. Ayala*, 178 Ariz. 385, 387, 873 P.2d 1307, 1309 (App. 1994) (reviewing a trial court's decision to exclude evidence for "a clear, prejudicial abuse of discretion" (citations omitted)).

**¶12** In this case, however, even assuming *arguendo* the trial court erred by precluding the tapes, any potential error was harmless because the statements in the 911 calls were cumulative to other evidence that set forth Appellant's third-party culpability defense. *See State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993) ("Error, be it constitutional or otherwise, is harmless if we can say, beyond a reasonable doubt, that the error did not

---

and arrested Appellant, despite protestations by the other occupants of Apartment 13 that Brown was the person who had attacked the victims.

6       After making its ruling, the court advised Appellant he could seek reconsideration of the ruling depending on "where it goes at trial." Appellant did not ask the court to reconsider its ruling on the motion.

contribute to or affect the verdict." (citation omitted)), *abrogation on other grounds recognized by McKinney v. Ryan*, 813 F.3d 798, 815 (9th Cir. 2015); *see also State v. Gallegos*, 178 Ariz. 1, 13, 870 P.2d 1097, 1109 (1994) (holding that, even assuming the trial court erred in precluding a defendant's hearsay statements that he was drunk and did not intend to kill the victim, the error was harmless because the statements were "merely cumulative" to other trial testimony); *State v. Parker*, 121 Ariz. 172, 174, 589 P.2d 46, 48 (App. 1978) (holding that the exclusion of cumulative testimony did not preclude presentation of the defendant's defense or violate due process when the jury heard testimony from other witnesses on the same issue).

¶13 Here, Appellant presented two witnesses—Almeda and Miller—who testified about the presence of a third party—Brown—and Brown's motive to assault the victims. The first 911 tape, which described a man wearing a gray tank top and dark jeans, made it no more likely that Brown was present than it did that Appellant was present.[7] Even assuming the second 911 tape was from Dominique *Brown*, the information on the tape was still cumulative to the testimony of Almeda and Miller, who testified Brown had called 911 demanding additional police come and arrest the police officers already present. Because the information in the 911 calls was simply cumulative to the witnesses' direct testimony on the matter, any possible error was harmless.

¶14 Moreover, we agree with the State that any potential error was harmless given the implausibility of Appellant's defense. *See United States v. Hayes*, 369 F.3d 564, 569 (D.C. Cir. 2004) (holding that the improper preclusion of defense evidence was harmless error when the defendant gave an implausible explanation for the number of overtime hours he submitted, and numerous mobile phone records and other evidence called his credibility into question); *see also United States v. Gant*, 17 F.3d 935, 944 (7th Cir. 1994) ("[T]he less believable the defense, . . . the more likely the conclusion that the constitutional error did not contribute to the conviction." (citation omitted)).

---

[7] The record does not include copies of the 911 tapes for this court's review. According to the State's motion in limine, the first call came from an anonymous woman who stated she saw a group of men fighting in the parking lot of the apartment complex and that an unknown male in a gray tank top and dark jeans was waving around a gun. The woman refused to provide her name and did not know the names of any of the men in the parking lot, but stated the men appeared to be returning to Apartment 13.

¶15  Appellant asked the jury to believe neither victim could distinguish between him and Brown—despite L.V. having previously met and spoken with Appellant, and J.H. having previously met and conversed with both men, including having met Brown multiple times while performing maintenance in Apartment 13.[8]  Appellant also asked the jury to believe the police arrested him and released Brown after officers had detained and handcuffed Brown and Brown had fled from their custody. Additionally, Appellant asked the jury to believe multiple police officers ignored subsequent reports from Almeda and Miller that Brown had committed the assaults and Appellant was innocent.  Finally, Appellant asked the jury to ignore Officer Albrand's testimony that he (1) went to Apartment 13 because the victims believed the attacker had come from that apartment, (2) did not see another male who matched the victims' description of their assailant, let alone one already in police custody, (3) did not speak to any witnesses informing him that someone else attacked the victims, and (4) would have listened to any witness who approached him with such information.  On this record, Appellant's defense was implausible; accordingly, any error in precluding the 911 tapes was harmless.

**CONCLUSION**

¶16  Appellant's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[8]  Further, Appellant asked the jury to believe neither victim could distinguish between him and Brown, even though Brown was significantly younger and had tattoos on only one arm, while Appellant had tattoos on both arms.

6