James **WILKERSON**, Defendant Below, Appellant,

v.

**STATE of Delaware**, Plaintiff Below, Appellee.

No. 311, 2007.

Supreme Court of Delaware.

Submitted: April 16, 2008.
Decided: July 8, 2008.

Ronald G. Poliquin, Young, Malmberg & Howard, P.A., Dover, Delaware, for appellant.

John R. Williams, Department of Justice, Dover, Delaware, for appellee.

Before STEELE, Chief Justice,
HOLLAND and BERGER, Justices.

STEELE, Chief Justice:

Appellant James Wilkerson appeals his conviction for Second Degree Assault[1] arising from the death of his two year old nephew, Derrick Lowe, Jr. Wilkerson argues that a Superior Court judge erred when he did not allow the defense to cross examine Derrick's mother, Laura Frank, about a specific incident observed by independent witnesses, in which she assaulted Derrick. The incident occurred two months before Wilkerson's alleged crimes and Derrick's death. Wilkerson further contends that had Frank denied the incident, independent evidence of that incident (the October 17th incident) would have impeached her credibility as she testified on direct that she never hurt Derrick. He contends that the trial judge erred by barring him from introducing independent evidence through the eyewitness testimony of two witnesses that Frank did in fact, contrary to her testimony in the State's case, violently assault Derrick two months before Derrick's death. Wilkerson contends that the trial judge should have permitted cross about the incident and that the trial judge misapplied the *Getz*[2] and *Deshields*[3] tests by analyzing the eyewitness testimony of the earlier incident in the context of "prior bad acts" of a witness offered to establish her responsibility for

Derrick's death. Wilkerson further contends that barring cross on the incident violated his constitutional right to confront the witnesses against him under the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Delaware Constitution.[4]

We find that the trial judge did not err by: (1) granting the State's motion *in limine* to bar independent testimony recounting the October 17th incident; and, (2) indirectly barring defense counsel from cross examining Frank about the incident. The jury heard some evidence about Frank's alleged abuse of Derrick, which served to impeach her credibility as it directly contradicted her statement on direct that she never hurt Derrick. They also heard testimony that Wilkerson struck Derrick. The jury acquitted Wilkerson of Murder by Abuse or Neglect, but convicted him of the lesser included offense of Second Degree Assault. As there was sufficient evidence presented to the jury to support Wilkerson's conviction for Second Degree Assault and because it was unlikely that cross examining Frank, even if she reversed course from her testimony in the State's case in chief, would produce a different result, we affirm.

## FACTS

Derrick Lowe, Jr. was two years and four months old when he died on December 3, 2005. He lived with his 22 year old mother Frank and his three month old baby sister Destiny. Also living with them in the fall of 2005 were Wilkerson, his girlfriend Michelle Hawkins, and their baby daughter. Wilkerson is the half

**1.** 11 *Del. C.* § 612(a)(10).

**2.** *Getz v. State*, 538 A.2d 726, 734 (Del.1988).

**3.** *Deshields v. State*, 706 A.2d 502, 506–07 (Del.1998).

**4.** U.S. CONST. amend. VI; DEL. CONST. art. I, § 7.

brother of Derrick Lowe, Sr., Derrick's father.

On Tuesday, November 29, 2005, Frank, Destiny, and Hawkins went shopping, leaving Derrick at home with Wilkerson and Wilkerson's daughter. Frank testified that when she returned home, she noticed bruises on Derrick's face, and that Wilkerson told her that Derrick had fallen off his skateboard twice. On Friday, December 2, 2005, Derrick began vomiting. The next day, as the vomiting continued, Frank called for a friend to give them a ride to the hospital. Derrick appeared lifeless while they were waiting and Frank called an ambulance. Derrick was not breathing when they arrived at the hospital and he was pronounced dead an hour later. Wilkerson and Hawkins moved out the next day.

Judith G. Tobin, M.D., an Assistant State Medical Examiner, performed Derrick's autopsy on December 4, 2005. Dr. Tobin found twelve bruises on Derrick's face and another eight on his body. Dr. Tobin found one large hemorrhage and five smaller ones under Derrick's scalp. In Dr. Tobin's opinion, blunt force trauma caused the bruises. Dr. Tobin testified at trial that "[Derrick] had had a perforation of his small intestine with a leakage into the peritoneal cavity which resulted in acute peritonitis and sepsis." She further stated, "I feel that this child sustained a blow to the abdomen, so could be a backhand, could be a fist, but some blunt force trauma which struck the small intestine."

Importantly, for our analysis, Dr. Tobin testified that she believed the fatal blow was received *at least 48 hours before his death* and that Derrick could not have received the intestinal injury from hitting his abdomen on a skateboard. She also testified that two falls from a skateboard would not have produced Derrick's twelve facial bruises.

When the Dover Police first interviewed Frank at the hospital on December 3, 2005, she told Detective David Spicer that she was at home when Derrick fell off his skateboard twice, striking each side of his face. On December 5, 2005, Frank changed her story and told Spicer that she was not at home when Derrick fell off his skateboard, and that she had left him alone with Wilkerson while she and Hawkins went shopping. Frank testified that she lied about being present when Derrick fell off the skateboard because she did not believe it had anything to do with his death and that Wilkerson had asked her not to say he was present when Derrick fell. Frank denied ever hurting Derrick, first to Spicer, and then inferentially at trial.

Spicer interviewed Wilkerson on December 6, 2005, and after a second interview on December 23, 2005, arrested Wilkerson for Murder by Abuse or Neglect. Before trial, Frank pled guilty to endangering the welfare of a child by not seeking medical treatment in a more prompt manner and for falsely reporting an incident.

### NATURE OF THE PROCEEDINGS

The State filed a motion *in limine* before trial seeking to exclude evidence of an October 17, 2005 incident in which two State employees witnessed Frank strike Derrick more than ten times both inside and outside of the James Williams Service Center (a State of Delaware Social Services Building). The State evidently anticipated both that Frank would testify on direct that she had never hurt Derrick and that the defense would offer eyewitness testimony to the contrary in its case. One of the state employees told Frank that she would call the Division of Family Services if Frank did not stop hitting Derrick. After they left the building, Derrick ran

away from Frank in the parking lot, and a bystander witnessed Frank grab Derrick, throw him into the backseat of her vehicle, and strike him in a violent manner eight to ten times. A recorded phone call placed to the Division of Family Service's Child Abuse Hotline immediately after the incident also provided a full account. Because the State believed Wilkerson would offer evidence of the October 17th incident as independent evidence suggesting Frank may have inflicted blows that caused Derrick's death, the State argued that the evidence was inadmissible under D.R.E. 404(b). The motion *in limine* focused the parties and the trial judge on the prospective of "evidence of other wrongs or acts ... to prove the character of a person in order to show action in conformity therewith."[5] The motion served as a prophylactic to assure that the jury would not hear evidence about the October 17th incident consistent with a theory that Frank's and not Wilkerson's assaults on Derrick cost him his life. The State's motion *in limine* sidestepped the question of Frank's status as a material, essential State's witness whose credibility affected the question of whether Wilkerson was with Derrick within 48 hours of Derrick's death.

The trial judge carefully examined D.R.E. 404(b) and related Delaware case law and ruled before trial that only "eyewitness testimony of physical blows by Laura Frank to the child from November 15 through December 3" could be presented.

During trial, before the State completed its case in chief, Wilkerson moved to reargue the ruling barring the admission of independent evidence of the October 17th incident. After analyzing the request by

applying the factors of the *Getz*[6] and *Deshields*[7] tests, as if the purpose of the testimony was to establish that Frank caused Derrick's death in conformity with her past acts, the trial judge excluded the prior bad acts evidence based on D.R.E. 404(b) and on D.R.E. 608. The trial judge explained that the incident was too remote, it was not alleged to be the cause of death, and it raised the possibility of confusing the jury about who was on trial and could lead to tangential proceedings. Neither the parties nor the trial judge focused on a more compelling issue: If Frank could be cross examined for the purpose of testing the truthfulness of her statements inferring that she had never hit Derrick hard enough to hurt him, i.e., could the cross appropriately ask her if she had "hit him hard enough to hurt him" on October 17th, two months before Derrick's death? And, if she denied the October 17th incident on cross, could the defense in its case offer the testimony of two State employee eyewitnesses that she had indeed?

At trial, Frank testified that she had not seen Wilkerson hurt Derrick and that she had merely "... spanked his butt before ... [and] hit [him] in the stomach, sometimes ... like soft...." Travis Furniss, Wilkerson's friend who frequently visited the home, testified that he never saw Wilkerson do anything "out of line" to Derrick. Furniss also testified that he saw Frank strike Derrick on a regular basis, and that he saw Frank strike Derrick in the stomach around Thanksgiving 2005. Michelle Hawkins, Wilkerson's girlfriend, also testified that she saw Frank hit Derrick.

Two of Wilkerson's fellow inmates at the Delaware Correctional Center testified at

---

5. D.R.E. 404(b).

6. *Getz*, 538 A.2d at 734.

7. *Deshields*, 706 A.2d at 506–07 (listing nine factors that a court should consider in applying the Rule 403 balancing test to Rule 404(b) evidence).

trial about incriminatory admissions Wilkerson made to each of them. Michael Lister testified that Wilkerson told him that he pushed Derrick off the skateboard and hit him and that Wilkerson admitted to punching the child in the stomach with his fist and striking him several times in the stomach. Another inmate, Alan Cave, testified that Wilkerson told him he was in trouble for "hurting a little boy," by practicing karate on him. Wilkerson allegedly told Cave that he thought the authorities would blame Derrick's death on Frank. The defense offered other inmate testimony to cast doubt on Lister's and Cave's credibility.

## DISCUSSION

We review claims of constitutional error *de novo*.[8] We review a trial judge's rulings limiting evidence of a witness's prior conduct for abuse of discretion.[9]

Both the Delaware and United States Constitutions guarantee the basic right of cross examination.[10] Through cross examination, "the believability of a witness and the truth of his testimony are tested."[11] However, the right of cross examination is not unlimited and trial judges are permitted to impose reasonable boundaries on the scope of cross examination.[12] As we wrote in *Weber v. State*, "When the cross examination relates to impeachment evidence, the test for determining if the trial judge's limitation on cross examination violated the defendant's confrontation right is whether the jury had in its possession sufficient information to appraise the biases and motivations of the witness."[13]

In Michael H. Graham's treatise, Handbook of Federal Evidence, he writes:[14]

On cross-examination of a witness, every permissible type of impeachment may be employed[,] for cross-examination has as one of its purposes the credibility of the witness.[15]

The use of extrinsic evidence[16] to contradict is more restricted due to consid-

8. *Dahl v. State*, 926 A.2d 1077, 1081 (Del. 2007).

9. *Smith v. State*, 913 A.2d 1197, 1228 (Del. 2006).

10. *Snowden v. State*, 672 A.2d 1017, 1024 (Del.1996); *Hall v. State*, 788 A.2d 118, 123 (Del.2001); *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) ("a primary interest secured by [the Sixth Amendment Confrontation Clause] is the right of cross-examination . . .").

11. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

12. *Snowden*, 672 A.2d at 1025 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) ("trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the is-

sues, the witness' safety, or interrogation that is repetitive or only marginally relevant.")).

13. *Weber v. State*, 457 A.2d 674, 681 (Del. 1983).

14. MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 607:2 (6th ed.2006).

15. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.").

16. (citations omitted).

erations of confusion of the issues, misleading the jury, undue consumption of time, and unfair prejudice [17] raised by the introduction of so-called collateral matters. *If* a matter is considered collateral, the testimony of the witness on direct or cross-examination stands—the cross-examiner must take the witness' answer; extrinsic evidence, i.e. evidence offered other than through the witness himself, in contradiction is not permitted.[18]

If the matter is not collateral, extrinsic evidence may be introduced disputing the witness' testimony on direct examination or denial of truth of the facts asserted in a question propounded on cross-examination.[19]

Evidence offered for the purpose of contradiction or self contradiction such as a prior inconsistent statement is non-collateral if the subject matter of the evidence is relevant in the litigation to establish a fact of consequence, i.e., relevant for a purpose other than mere contradiction of the in-court testimony of the witness—the subject matter itself tends to directly or circumstantially establish a fact of consequence.[20]

Here, the defense could have cross examined Frank about whether she hit her child in a manner exceeding soft blows to the stomach or "spanking his butt" on October 17th.[21] The defense would have been left with whatever answer she gave. Interestingly, the defense did not and im-

plies on this appeal that the trial judge improperly barred that cross examination. Frank's testimony was crucial to the prosecution because it placed Wilkerson alone with Derrick within the time frame when Derrick received the fatal blow. Impeaching Frank's credibility is relevant to a material issue in the case, and narrowly tailored questioning subject to a limiting instruction about the incident could have cast doubt on Frank's material testimony.

In the event that Frank denied the October 17th incident on cross examination, however, the defense would not have been permitted to present the independent prior bad acts evidence through the independent eyewitnesses even for the limited purpose of impeachment. The October 17th incident was "collateral" in the sense explained in Graham's treatise. Testimony about Frank's actions on October 17th would be inconsistent with her assertions in the trial testimony and pretrial statement to the police, but "would not have established a fact of consequence, i.e., relevant for a purpose other than mere contradiction of the in-court testimony of the witness—." [22] D.R.E. 608(b)(1) clearly provides that impeachment of a witness's "character" for truthfulness by means of specific instances of conduct not resulting in a conviction is collateral.[23]

D.R.E. 608 grants the trial judge discretion to admit specific instances of conduct for the purpose of impeaching a witness's credibility.[24] It is important to note here

---

17. (citation omitted).

18. (emphasis added) (citations omitted).

19. *See generally United States v. Lipp,* 54 F.Supp.2d 1025, 1037–38 (D.Kan.1999). (other citations omitted).

20. *United States v. Hayes,* 369 F.3d 564, 567 (D.C.Cir.2004). (other citations omitted).

21. "The credibility of a witness may be attacked by any party, including the party calling him." D.R.E. 607.

22. GRAHAM, *supra* note 13 at 446.

23. D.R.E. 608(b)(1).

24. "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than

that while the State opposed introducing evidence of the October 17th incident through independent eyewitness testimony, the State did so out of fear the jury would wrongly conclude that Frank's and not Wilkerson's assault caused Derrick's death. It appears the State successfully enticed the trial judge into an analysis focused on that possibility, rather than one focused on cross examination alone. Correspondingly, the defense never challenged Frank's "no harm, no foul" testimony on cross nor articulated clearly to the trial judge any reason D.R.E. 607 or 608 would allow evidence of the October 17th incident simply to impeach Frank's testimony. As a result of not having been fairly presented a theory that the October 17th incident was non-collateral, the trial judge simply addressed D.R.E. 608. He appropriately focused on Dr. Tobin's testimony that the blows that killed Derrick had to have been inflicted within 48 hours of his death and concluded, in essence, that the specific conduct outlined by the testimony proffered about the October 17th incident could neither be inquired into on cross nor admitted as extrinsic evidence of Frank's lack of credibility.

█ Here, we find that the trial judge did not err by excluding both cross and independent testimony about the October 17th incident. Even if we were to find error based on constitutional principles, most claims of constitutional error are subject to a harmless error analysis, including errors in limiting the cross examination of prosecution witnesses.[25] The jury did hear testimony about Frank striking Derrick from Furniss and Hawkins that cast doubt on her credibility. Furthermore, the jury acquitted Wilkerson of both Murder by Abuse or Neglect in the First and Second Degree, clearly showing that the jury had not been convinced beyond a reasonable doubt that Wilkerson's conduct caused Derrick's death and inferring that Frank's own conduct troubled them. The overall evidence presented the jury with more than a sufficient basis to convict Wilkerson of the lesser included offense of Second Degree Assault. Cross examining Frank about the October 17th incident may have cast more doubt on her credibility, but the facts clearly supported Wilkerson's conviction for Second Degree Assault. Therefore, we are content that the jury considered the relevant evidence and that no error occurred in the presentation of that evidence.

### CONCLUSION

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

---

conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." D.R.E. 608(b).

**25.** *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Delaware v. Van Arsdall,* 475 U.S. 673, 680–81, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (holding that Confrontation Clause violations are subject to harmless error analysis because "the Constitution entitles a criminal defendant to a fair trial, not a perfect one."); *Flonnory v. State,* 893 A.2d 507, 522 (Del.2006).