**Joseph B. DICKERSON, Defendant Below, Appellant,**

**v.**

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 557, 2008.**

Supreme Court of Delaware.

Submitted: May 21, 2009.

Decided: June 19, 2009.

---

Thomas D. Donovan, Esquire, Dover, Delaware; for Appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware; for Appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

JACOBS, Justice.

Joseph B. Dickerson, the defendant below, appeals from Superior Court final judgments of conviction of Carrying a Concealed Deadly Weapon and Resisting Arrest with Force and Violence ("Felony Resisting Arrest"). Dickerson claims that the Superior Court erroneously denied his two motions for judgments of acquittal: (1) of the Carrying a Concealed Deadly Weapon charge, because the applicable statute cannot be constitutionally applied to a concealed carry that occurs entirely on the defendant's private property; and (2) of the Felony Resisting Arrest charge, because there was insufficient evidence to satisfy the "force or violence" requirement of Felony Resisting Arrest. Dickerson claims also that the Superior Court erroneously denied his request for a lesser-included offense instruction on Misdemeanor Resisting Arrest. We find no error and affirm.

### *FACTS*

On Tuesday afternoon, January 30, 2007, the Delaware State Police received a report from Carl Frank that Dickerson, who was Frank's neighbor, had brandished a firearm at Frank when Frank approached Dickerson to discuss an ongoing dispute. Trooper Christopher Martin responded to the scene at 690 Judith Road, Hartly, Delaware, spoke with Frank, and collected additional information about the incident between Frank and Dickerson. Because the dirt road heading towards Dickerson's trailer had numerous potholes, Trooper Martin decided to walk rather than drive to Dickerson's trailer.

Upon arriving at Dickerson's trailer, Trooper Martin banged on the side, identified himself, announced that he was with the State Police, and asked Dickerson to come out and speak with him. Dickerson shouted profanities and demanded that Martin get off his property. Martin said that he wanted Dickerson to "let him know what's going on here," but Dickerson responded with more profanity. As a precaution, Martin radioed for backup. Thereafter, Dickerson came to the door of his trailer.

Trooper Martin—who was wearing his police uniform—asked Dickerson to show his hands and state whether he had any weapons. Dickerson did not comply and told Martin to "get the fuck off my property[,] I'm not talking to you." Trooper Martin again asked Dickerson whether he had any weapons on him. By that point Trooper Martin began to feel anxious about being alone with Dickerson, who was uncooperative and reportedly armed. Dickerson was wearing an untucked shirt, underneath which (Martin suspected) Dickerson might be concealing a weapon. Given this total lack of cooperation, Martin drew his handgun and ordered Dickerson to show his hands. Dickerson ignored Trooper Martin, stepped down from his trailer and began walking toward his SUV, which was parked several feet away from the trailer.

Concerned that Dickerson might be trying to get a weapon from the car, Trooper Martin pinned Dickerson against the SUV and attempted to handcuff him. Although Martin ordered Dickerson to "stop resisting" and "give me your hands," a struggle ensued. Both men fell to the ground, with Trooper Martin landing on top of Dickerson, who continued to struggle. Trooper Martin eventually managed to cuff Dickerson's hands in front of him, conducted a "pat-down" search of Dickerson, and discovered a .38 caliber pistol in Dickerson's rear pocket—hidden underneath Dickerson's untucked shirt.

Dickerson was charged with, *inter alia*, Felony Resisting Arrest and Carrying a Concealed Deadly Weapon. At trial, Dickerson testified that he had not resisted arrest. Dickerson also moved for judgments of acquittal of: (1) the Carrying a Concealed Deadly Weapon charge, claiming that the concealed carry statute cannot constitutionally restrict a person's right to carry a concealed weapon on his own property; and (2) the Felony Resisting Arrest charge. Dickerson also requested a jury instruction on the lesser-included offense of Misdemeanor Resisting Arrest, arguing that the State had failed to establish that he resisted arrest with "force or violence." The trial judge denied both motions and declined to instruct the jury on the lesser included offense of Misdemeanor Resisting Arrest. The jury convicted Dickerson of Felony Resisting Arrest and Carrying a Concealed Deadly Weapon. Dickerson timely appealed.

### *ANALYSIS*

#### A. *The Issues*

In denying Dickerson's motion for acquittal of the Carrying a Concealed Deadly Weapon charge, the trial judge reasoned:

[*Smith v. State*[1] says] "there is no language [in the Delaware Constitution] that entitles a person to conceal the weapon he carries. Rather, any such entitlement involves only a privilege to carry a concealed weapon when there is a license." I don't think the [defendant's] argument is well taken, so I'm going to [deny the motion for a judgment of acquittal].

With respect to the motion to acquit of the Felony Resisting Arrest charge, the trial judge engaged in the following colloquy with counsel, before denying Dickerson's motion for a judgment of acquittal and his request for an instruction on the lesser-included offense of Misdemeanor Resisting Arrest:

> Defense Counsel: ... I think is the lesser-included offense of a misdemeanor [Resisting Arrest] which we'd ask to be included as well. But part of our motion would be that there was no evidence of force or violence.... [T]he felony resisting arrest shouldn't go to the jury, and at a minimum, the lesser-included of that, the misdemeanor should.
>
> The Court: Well, I think that it's certainly sufficient to go to the jury. I'm not sure that it's legitimately there, that there's anything that says it wasn't with force, if he resisted.
>
> Prosecutor: [Dickerson] said he didn't do anything. The officer on both direct and then on rebuttal said that he was forcefully resisting being cuffed.
>
> Defense Counsel: No. He said he resisted, which is resisting arrest, misdemeanor.
>
> The Court: I don't think you can possibly construe the testimony of Trooper Martin as an arrest absent force or violence....

> \* \* \*
>
> The Court: Every step of the way, [Trooper Martin] describes a struggle with the guy.
>
> \* \* \*
>
> The Court: ... I don't think the lesser-included applies here. I think the only testimony is either I wasn't resisting, period, or that the resisting was forceful.

On appeal, Dickerson advances two claims. First, he contends that he had a constitutional right to carry a concealed weapon—without a license—on his own private property. Second, he claims that the evidence at trial did not establish that he resisted arrest with "force or violence." Therefore, Dickerson urges, he was entitled to a dismissal of the Carrying a Concealed Deadly Weapon and Felony Resisting Arrest charges, and to an instruction on Misdemeanor Resisting Arrest.

The State responds that: (1) the concealed carry statute does not contain a "home possession" exception, nor does it conflict with the Delaware Constitution; (2) Trooper Martin's testimony established the necessary proof of "force or violence" and precluded dismissal of the Felony Resisting Arrest Charge; and (3) the conflict between Martin's testimony (that Dickerson struggled with him) and Dickerson's testimony (that he did not resist arrest) supported *only* a conviction on Felony Resisting Arrest or an acquittal of that charge. It did not support a conviction of—or an instruction on—Misdemeanor Resisting Arrest.

These contentions raise two issues. First, does the Delaware Constitution contain an implicit right to carry concealed firearms on a person's own property? Second, did Dickerson's struggle with

---

**1.** 882 A.2d 762 (Table), 2005 WL 2149410, at \*3 (Del.Supr. Aug.17, 2005).

Trooper Martin establish resistance with "force or violence?"

## B. *Discussion*

*Dickerson's Voluntary Departure from His Trailer Placed Him Outside Any Arguable "Home Possession" Exception to the Concealed Carry Statute.*

■ In denying Dickerson's motion for a judgment of acquittal on the Carrying a Concealed Deadly Weapon charge,[2] the trial judge found that the constitutional right to bear arms did not permit Dickerson to carry a concealed weapon, because concealed carry is a privilege, not a right. This Court reviews a claim of constitutional error *de novo*.[3]

■ Dickerson claims that Article I, Section 20 of the Delaware Constitution[4] guarantees a person's right to carry a concealed weapon on one's own property, or, alternatively, a more limited right to carry a concealed weapon in one's own home. Dickerson argues that he lawfully possessed a concealed gun inside his trailer, and that his forcible removal from his home by Trooper Martin precludes holding him criminally liable for that crime.

Dickerson relies on *State v. Stevens*,[5] an Oregon Court of Appeals case. In *Stevens*, the defendant was hiding in his home underneath a pile of clothing with a switchblade knife in his rear pocket. The police arrested the defendant and after taking

him outside, discovered the knife in his pocket. The defendant was convicted of carrying a concealed deadly weapon. The Oregon appellate court reversed the conviction, reasoning that:

First, the simple act of carrying a concealed switchblade within one's own home is not the type of unrestrained rights-exercising that "poses a clear threat" to *public* safety and that can therefore be regulated [consistent with the Oregon Constitution]. Second, the state's interpretation would restrict the manner in which one could carry a legal weapon from room to room within one's home and would inhibit an act that is so intrinsic to ownership and self-defense that it would unreasonably interfere with the exercise of one's constitutional right to *possess* the switchblade. We therefore hold that [the concealed carry statute] applies only to the carrying of concealed weapons outside one's own home.[6]

The State responds that this Court has rejected the proposition that the constitutional right to bear arms restricts enforcement of the concealed carry statute.[7] The State also argues that: (1) Dickerson's argument for "home possession" exception conflicts with the public safety rationale of the concealed carry statute, and (2) whether there should be a "home possession" exception to the concealed carry statute is

---

2. *See* 11 *Del. C.* §§ 1441 ("License to Carry Concealed Deadly Weapons") and 1442 ("Carrying a Concealed Deadly Weapon").

3. *Wilkerson v. State*, 953 A.2d 152, 156 (Del. 2008).

4. "A person has the right to keep and bear arms for the defense of self, family, home and State, and for hunting and recreational use."

5. 113 Or.App. 429, 833 P.2d 318, 319–20 (1992).

6. *Id.* at 319 (emphasis in original) (internal citations omitted).

7. *Smith*, 2005 WL 2149410, at *3 ("[The Delaware Constitution] contains no language that entitles a person to conceal the weapon he carries. Rather, any such entitlement involves only a *privilege* to carry a concealed weapon—a privilege that is regulated by statute: 11 *Del. C.* § 1441.")

an issue for the legislative branch, not the courts.

Assuming, without deciding, that the Delaware Constitution permits carrying a concealed deadly weapon *inside* one's home without a license, that claim, even if valid, does not help Dickerson. Because Dickerson took his concealed handgun outside of his trailer, he carried it outside of his home. Thus, we need not decide whether Delaware should follow *Stevens,* whose holding is limited to situations where the defendant carries a concealed weapon in his own home.[8]

Assuming, without deciding, that Dickerson had a right to carry a concealed weapon inside his own home, the issue is whether Dickerson had any legal excuse for taking the concealed gun outside his trailer. Specifically, did Dickerson leave his trailer voluntarily or was he forcibly removed from the trailer by Trooper Martin? Dickerson argues that he was under arrest when Martin first showed up at his door, therefore was compelled by Trooper Martin to leave his trailer, and that such compulsion excuses his criminal liability.

■ Dickerson's argument fails because it conflates being under arrest with being forced to leave his trailer. A person is "seized" within the meaning of the Fourth Amendment (and, therefore, is under arrest), where a reasonable person would not feel free to leave under all the circumstances surrounding the incident.[9] Even if a reasonable person would not have felt free to leave, that does not establish that Dickerson was compelled to step outside his trailer. Dickerson points to no evi-

dence that Trooper Martin compelled him to do that. The evidence establishes only that Trooper Martin asked Dickerson to: (1) explain the earlier incident between him and Frank; (2) show his hands; and (3) state whether he had any weapons. Dickerson could have answered Trooper Martin's questions from inside his trailer. Dickerson voluntarily left his trailer while carrying a concealed handgun. He therefore cannot establish a colorable defense to Carrying a Concealed Deadly Weapon.

*The Evidence Did Not Support a Dismissal of the Felony Resisting Arrest Charge or Jury Instruction on Misdemeanor Resisting Arrest.*

As earlier noted, the trial judge denied both Dickerson's motion for a judgment of acquittal on the Felony Resisting Arrest charge and his request to instruct the jury on Misdemeanor Resisting Arrest. The trial judge reasoned that Dickerson's testimony that he did not resist, and Trooper Martin's testimony that Dickerson did resist, required the jury either to find that there was no resistance—and therefore acquit on the Felony Resisting Arrest charge—or find that Dickerson resisted with "force or violence"—and therefore convict on the Felony Resisting Arrest charge.

On appeal, Dickerson argues that physical resistance to arrest does not rise to the level of Felony Resisting Arrest unless force or violence is directed *towards* the arresting officer. Dickerson contends that the State established only that Dickerson physically resisted—not that he directed

---

**8.** *Stevens,* 833 P.2d at 319. Dickerson mischaracterizes *Stevens* as applying to *all* of a defendant's private property. The opinion's clear language limits the right to unlicensed concealed carry to the defendant's home. ("We therefore hold that [the concealed carry statute] applies only to the carrying of con-

cealed weapons *outside one's own home")* (emphasis added).

**9.** *State v. Huntley,* 777 A.2d 249, 254 (Del.Super.2000) (citing *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)).

any force or violence towards Trooper Martin. In response, the State points to the fact that Dickerson struggled with Trooper Martin, that the two men fell to the ground, and that Martin had to wrestle with Dickerson to handcuff him—all facts that establish the force and violence element of Felony Resisting Arrest.

■ These contentions raise two questions. First, was there sufficient evidence for the jury to convict Dickerson of Felony Resisting Arrest? Second, could the jury have rationally acquitted Dickerson of Felony Resisting Arrest, yet convict him of Misdemeanor Resisting Arrest? Addressing these questions requires us to interpret the newly-amended Resisting Arrest statute.[10] We review the denial of a motion for a judgment of acquittal *de novo*, to determine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt."[11] We review a trial court's refusal to give a lesser-included offense instruction *de novo*, to determine if "there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense."[12] We address questions of statutory interpretation *de novo*.[13]

■ The Resisting Arrest statute provides:

(a) A person is guilty of resisting arrest with force or violence when:

(1) The person intentionally prevents or attempts to prevent a police officer from effecting an arrest or detention of the person or another person by use of force or violence towards said police officer, or

(2) Intentionally flees from a police officer who is effecting an arrest against them by use of force or violence towards said police officer, or

(3) Injures or struggles with said police officer causing injury to the police officer. Resisting arrest with force or violence is a class G felony.

(b) A person is guilty of resisting arrest when the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of the person or another person or intentionally flees from a peace officer who is effecting an arrest.

Resisting arrest is a class A misdemeanor.[14]

Dickerson argues that having struggled with Trooper Martin does not, without more, establish that he used force or violence *towards* Martin. Therefore, the trial court erroneously denied his motions to acquit on Felony Resisting Arrest and to instruct the jury on the lesser included misdemeanor. The State responds that Trooper Martin's testimony established Felony Resisting Arrest, and also precluded an instruction on Misdemeanor Resisting Arrest.[15] Neither the State nor Dick-

---

10. In 2006, 11 *Del. C.* § 1257 (Resisting Arrest) was amended to add a felony provision. Neither party cites to any cases interpreting Felony Resisting Arrest, nor does a search of Westlaw disclose any such cases.

11. *Monroe v. State*, 652 A.2d 560, 563 (Del. 1993) (citations omitted).

12. *Cseh v. State*, 947 A.2d 1112, 1114 (Del. 2008) (quoting 11 *Del. C.* § 206(c)).

13. *Tony Ashburn & Son, Inc. v. Kent County Reg'l Planning Comm.*, 962 A.2d 235, 239 (Del.2008) (citations omitted).

14. 11 *Del. C.* § 1257.

15. Additionally, the State cites to cases where a defendant who struggled with the police was convicted of Resisting Arrest. *See, e.g., Dickens v. State*, 815 A.2d 348 (Table), 2003 WL 132547 (Del.Supr. Jan. 14, 2003). These cases are inapposite, because they were decid-

erson present their arguments with any analytical rigor. Both advance cursory claims that Trooper Martin's testimony either establishes, or fails to establish, that Dickerson used force or violence towards Martin.

In 2006, 11 *Del. C.* § 1257 was amended to provide for Felony Resisting Arrest in a new subsection (a), with the prior Resisting Arrest provision being redesignated Misdemeanor Resisting Arrest in a new subsection (b). The key distinction between the two levels of Resisting Arrest is as follows: to prove Felony Resisting Arrest, the State must establish that the defendant either: (1) prevents or attempts to prevent an arrest by using force or violence towards a police officer attempting to effect an arrest; (2) intentionally flees by using force or violence towards such an officer; or (3) injures such an officer or struggles with the officer in a way that results in injury to the officer. Only the first prong of Felony Resisting Arrest applies here, because Dickerson did not flee and Trooper Martin did not claim that he was injured.

■ The issue is narrowed to whether Trooper Martin's testimony—that Dickerson disobeyed his commands to stop struggling when he was trying to cuff Dickerson, that the two fell over, and that he (Martin) had to scramble to cuff Dickerson—would enable a rational jury to conclude that Dickerson used force or violence *towards* Martin. Because Dickerson did not strike or attack Trooper Martin, the State did not establish the "violence" element of "force or violence." The evidence was sufficient, however, to show that Dick-

erson directed "force" towards Trooper Martin. Dickerson's struggle with Martin involved Dickerson pulling his hands away from Trooper Martin while Martin was trying to restrain Dickerson's hands. The Felony Resisting Arrest statute does not define "force," but Dickerson's struggle against Trooper Martin is consistent with the dictionary definition of that term: the use of strength or power.[16] Force was directed *towards* Martin, because Dickerson was pulling his hands away from Martin and pushing against Martin's efforts to pin Dickerson against a vehicle. Martin's testimony, therefore, was sufficient for a rational jury to find that Dickerson used force towards Martin, and to convict Dickerson of Felony Resisting Arrest on that basis. Therefore, the trial court properly denied Dickerson's motion for a judgment of acquittal.

■ The final issue is whether there is a rational basis in the evidence for a jury to acquit Dickerson of Felony Resisting Arrest, yet convict him of the lesser included offense of Misdemeanor Resisting Arrest. Dickerson flat-out denied resisting arrest. Because only Trooper Martin and Dickerson were present during the arrest, the jury was presented with *only* two choices: (1) believe Martin's testimony and convict Dickerson of Felony Resisting Arrest or (2) credit Dickerson's testimony and acquit. Because there was no middle ground, *i.e.,* no factual basis for the jury to find that Dickerson resisted without using force towards Martin, there was no legal basis for the jury to convict Dickerson of Misdemeanor Resisting Arrest.

ed before the legislature enacted the Felony Resisting Arrest provision.

**16.** "Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined [in a statute]." *Cephas*

*v. State,* 911 A.2d 799, 801 (Del.2006). Random House provides "strength or power exerted upon an object" as a primary definition for "Force." *See* Random House Unabridged Dictionary, 748 (2d ed. 1993).

## CONCLUSION

For the foregoing reasons, the judgments of the Superior Court are affirmed.