Counsel shall confer and submit a form of order consistent with this Opinion.

**STATE of Delaware**

v.

**Joseph M. TAYE.**

**Criminal Action No. IN 09–01–0400.**

Superior Court of Delaware,
New Castle County.

Submitted: June 30, 2009.
Decided: Aug. 27, 2009.

Sean P. Lugg, Esquire and John W. Downs, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorneys for State of Delaware.

Joseph Hurley, Esquire, Wilmington, Delaware, Attorney for Defendant.

## MEMORANDUM OPINION

HERLIHY, Judge.

Defendant Joseph Taye ("Taye") has been indicted for various offenses arising out of a motor vehicle incident in which Michelle Smith ("Smith") was killed. Count I of the indictment charges him with murder in the first degree. That charge arises because Smith was a member of the Delaware City Volunteer Fire Company tending to an injured motorcycle operator when she was hit by a vehicle Taye was allegedly driving. Two days later she died.

Count I charges:

JOSEPH TAYE on or about the 20th day of December, 2008 in the County of New Castle, State of Delaware, did recklessly cause the death of Michelle Smith, a firefighter in the lawful performance of duties.

This charge tracks the statutory language of 11 *Del. C.* § 636(a)(4).[1] There was no fire at the accident scene and Smith was not suppressing any fires when she was struck. Further, the Criminal Code does not define firefighter. These circumstances have prompted Taye to move for dismissal of Count I.

 When the Criminal Code does not define a word, the commonly accepted meaning and dictionary definition of that word are to be used. Both the commonly accepted meaning and the dictionary definition in this case mean that a firefighter is a person who fights fires. The issue, therefore, is whether Smith was acting within the scope of a firefighter when she was struck. The Court holds the issue cannot be decided on the record presented and must be decided at trial.

### Factual Background

On December 20, 2008, Edward Reiss ("Reiss") was driving on Route 13 in New Castle County when he lost control of his motorcycle while approaching School Lane. Reiss and his motorcycle slid to a stop in the far left lane. Emergency services were called and Smith, driving an ambulance, spotted Reiss and parked in the left through lane of southbound Route 13. She left the ambulance's emergency lights on.[2] Smith began administering medical treatment to Reiss.[3] New Castle County Police Officer Jordan Miller also responded to the scene. He positioned his police car behind the ambulance, with its emergency lights flashing.[4]

While on the scene, Officer Miller saw a vehicle driving toward him at a high rate of speed. The car, later identified as a silver BMW 760, struck the police car, ran over Reiss, and then struck Smith, sending her body through the air several feet down the roadway. The damaged BMW drove away, in a fast and erratic manner, until it crashed in the shoulder area further down Route 13. A witness pulled up behind the BMW in the shoulder. This witness then saw a light colored Honda Accord pull up next to the BMW. The driver of the Honda dragged the driver of the BMW from the passenger side, put him into the Honda, and fled the scene. The driver of the BMW appeared unable to use his legs.[5]

---

1. A person is guilty of murder in the first degree when: The person recklessly causes the death of a law-enforcement officer, corrections employee or fire fighter while such officer is in the lawful performance of duties.

2. Cpl. William Nottingham Aff., ¶ 8.

3. *Id.*

4. *Id.* at ¶ 9.

5. *Id.* at ¶¶ 12–16.

A registration check showed that the BMW belonged to Tracey Young. When questioned by police, she identified herself as the girlfriend of Taye, a paraplegic. She told the police Taye never drove and that she did not know his whereabouts at the time of the incident. Several latent fingerprint impressions were taken from the BMW, all of which matched Taye.[6] Another investigation revealed that Taye's license was revoked, and that Taye had previously been known to drive vehicles with the assistance of a wooden stick.[7] The police, during the investigation of the BMW, retrieved a wooden stick from the car's interior.[8]

Smith and Reiss were taken to Christiana Hospital in critical condition. Two days later, Smith died from her injuries. Reiss survived, but sustained serious injuries as a result of his accident and from the impact he received from the BMW.

Discovery has been undertaken in the criminal charges pending before Taye. Taye's attorney, through an affidavit and discovery material provided, alleges that Smith at the time she was struck was responsible for driving an ambulance attached to Delaware City Fire Department.[9] It is alleged that Smith has been a volunteer member of the fire department since May of 2004. Furthermore, the affidavit states that Smith attended basic firefighter training and first responder training but had not acted in the actual extinguishment of fires. Instead, the affidavit alleges Smith acted primarily as a first responder and had plans to enroll in classes to become an emergency medical technician ("EMT").[10]

*Parties' Contentions*

In his motion to dismiss, Taye asks the Court to determine whether Smith maintained the requisite legal status of "firefighter" at the time of her death, a question if answered in the affirmative elevates a charge that would otherwise be Manslaughter to the charge of Murder in the First Degree. He notes the word "firefighter" is not defined in the Criminal Code and asks this Court to follow 11 *Del. C.* § 221(c), which mandates this Court to use the commonly accepted meaning of a word that is left otherwise undefined by the Legislature.[11] Taye submits "firefighter" is commonly defined in the dictionary as "a member of a fire department who fights fires."[12] Because Smith was not extinguishing a fire but was providing medical care, Taye contends Smith was acting consistent with the duties of an EMT.

Taye acknowledges that Smith attended Delaware State Fire School; however, he contends that she never functioned as a firefighter with the Delaware City Fire Department. Instead, Taye submits that Smith worked in an EMT capacity only. A "firefighter," Taye argues, should not be defined by a person's training but his or her actual occupation or conduct at the time of their death. At the time of the accident, 11 *Del. C.* § 636(a)(4) omitted EMTs as a protected occupation, function or status. Taye contends that Smith was acting like an EMT at the time of the accident and not as a firefighter; therefore, Taye argues the first degree murder count must be dismissed.

6. *Id.* at 23.

7. *Id.* at 24, 27.

8. *Id.* at 27.

9. Hurley Aff., Def.'s Motion to Dismiss, Ex. C.

10. *Id.*

11. Def.'s Br. 3.

12. *Id.*

As a preliminary matter, the State counters the defendant's motion by contending that Smith's status as a firefighter during the performance of her duties is a question of fact that ultimately must be determined by a jury.[13] Accordingly, the State asserts the motion is premature and can be denied by this Court and be resolved at trial.

The State, in the alternative, responds to defendant's statutory construction arguments and claims Taye's arguments concerning the word "firefighter" are overly strict and incorrect. The State asserts that Smith's mere training in firefighting is not what it relies upon to trigger the aggravating statutory language found in 11 *Del. C.* § 636(a)(4). It contends the role of a firefighter encompasses more than simply one who puts out fires.[14] The fact that Smith's duties included driving an ambulance and administering medical aid does not preclude her from protection under the statute.

### Discussion

■ Taye has been indicted for Murder in the first degree in that he recklessly caused the death of Smith, a firefighter.[15] At the time of her death, Smith was administering medical care to an injured person involved in a one-vehicle accident. There was no fire associated with this accident and Smith had driven an ambulance to the scene.

The word "firefighter" used in this particular subsection of first degree murder is not defined. It is an element of the offense, elevating what would be a manslaughter charge to a first degree murder charge. Given the factual circumstances of this case and the fact that firefighter is undefined, the question before the Court is whether it can determine, at this juncture, if the State can meet its burden of showing Smith was a "firefighter."

Both parties have considered the instant issue as one of statutory interpretation and have provided arguments framed by the rules of statutory interpretation. In interpreting a statute, the goal of the Court is to determine and give effect to the intent of the legislature.[16] Additionally, when the statute is found in the Criminal Code, "the provisions ... must be construed according to the fair import of their terms to promote justice and effect the purposes of the law."[17] Those purposes are laid out by the Legislature in 11 *Del. C.* § 201:

(1) To proscribe conduct which unjustifiably and inexcusably causes or threatens harm to individual or public interests;

(2) To give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction;

(3) To define the act or omission and the accompanying mental state which constitute each offense;

(4) To differentiate upon reasonable grounds between serious and minor offenses and to prescribe proportionate penalties therefore; and

(5) To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted and their confinement when required in the interests of public protection.

13. State's Br. 1.

14. *Id.* at 3.

15. 11 *Del. C.* § 636(a)(4).

16. *Ramirez v. Murdick,* 948 A.2d 395, 398 (Del.2008).

17. 11 *Del. C.* § 203.

■ The Court must utilize these rules and purposes to determine the common and fair import of the word, firefighter.[18] It is established precedent in Delaware to seek the common meaning and understanding of an undefined word from the authority of a dictionary.[19] The dictionary definition of "firefighter" is "a person who fights fires." [20]

Taye relies upon the dictionary definition to form the crux of his argument. The State agrees the common meaning of the word firefighter must apply to the current issue; however, it does not provide a dictionary definition. Instead, the State asserts the word firefighter has a common understanding of anyone who provides emergency services that may or may not be related to fire situations. Both parties have also referenced wikipedia.org, an online encyclopedia to strengthen their arguments for the common understanding of a firefighter.[21]

The Supreme Court in *Cephas v. State* had to consider the meaning of "pregnant" which was not defined in the criminal code.[22] In that case, the defendant Cephas hit the alleged victim, Maceeba Rogers, in her stomach and was charged with second degree assault. At the time she was struck by Cephas, Rogers had been "molar pregnant," a condition where a "patient has an abnormal placenta that grows out of control." [23] However, one significant distinction between molar pregnancies, when compared to a typical pregnancy, is that molar pregnancies have no fetal tissue and, therefore, cannot result in the birth of a child.

The State tried Cephas for second degree assault due to Cephas's alleged assault upon pregnant Rogers.[24] After a doctor opined that a molar pregnancy was considered a pregnancy in the medical field, the State rested and Cephas moved for judgment of acquittal, arguing that the State had not proved that Rogers was pregnant at the time of the assault.[25] The trial judge denied Cephas's request and left to the jury the question of whether Rodgers was pregnant. Nor did the lower court instruct the jury on the definition of "pregnant female."

On appeal, the Supreme Court rejected the State's position that it had established the necessary element of a "pregnant female." The Court, using the authority of a dictionary, determined the applicable definition of pregnant was "containing unborn

18. 11 *Del. C.* § 221(c).

19. *Dickerson v. State*, 975 A.2d 791, 798 (Del. 2009).

20. *Merriam–Webster's Collegiate Dictionary* (11th Ed.2004). The Court consulted a number of other dictionaries, including Oxford, American Heritage, etc. The definitions, though not identical, all require a person to be fighting fires.

21. Although the use of wikipedia.org can be a useful method of obtaining quick and often helpful information concerning a variety of topics, the Court does not view wikipedia.org as an authority that can be relied upon because the website is comprised upon information which is submitted by any person wishing to supply information. The democratic nature of the website is, unfortunately, what makes it an unreliable source of information in a legal setting.

22. 911 A.2d 799 (Del.2006).

23. *Id.* at 800.

24. 11 *Del. C.* § 612(a)(9).

25. Although it is unimportant for purposes of this opinion, the doctor's testimony, on appeal, was later found to be lacking because the doctor was deemed to be unqualified to make such a determination. It was only one of the grounds that the Supreme Court reversed the court below.

young within the body." [26] Given this finding, the Court held the victim's molar pregnancy did not coincide with the common meaning and understanding of the word "pregnant." Therefore, the Supreme Court held that Cephas did not strike a pregnant female as set forth by the statute and concluded the lower Court erred when it denied Cephas's motion for judgment of acquittal.[27]

In this case, the Court is inclined to agree that the dictionary definition of "firefighter" may not be broad as the State contends. The State argues that the common understanding of "firefighter" has expanded to accompany the various duties that firefighters must do in the course of their job beyond putting out fires. However, Delaware case law is well settled that undefined words are given their plain meaning based upon the definition provided by a dictionary.[28] Without any accompanying definition from the Legislature, the Court finds that dictionary provides "fair warning of the nature of the conduct proscribed." [29]

Accordingly, Smith's status as a firefighter for purposes of 11 *Del. C.* § 636(a)(4) is dependent on whether or not she participated in the extinguishing of fires during her duties. However, the inquiry is one of fact and, at the present time, the record is insufficient for this Court to make any judgment as to Smith's activities within the fire department. Taye's counsel has attached a self-sworn affidavit. The affidavit acknowledges that Smith was trained as a firefighter but states that Smith never assisted with the actual extinguishment of flames. Instead, the affidavit asserts that Smith was working for the fire department in only a medical capacity.[30]

The State, in response, claims it will prove that Smith was a firefighter. It does not, however, detail what Smith did in her work with volunteer fire department other than her driving of the ambulance to the accident scene on December 20th. There is agreement between both parties that Smith performed many medical functions with the fire company.

■ When the facts are not fully developed, a Motion to Dismiss the Indictment is inappropriate.[31] Because the issue is one of fact and the factual record regarding Smith's work with the fire department is lacking, the Court is precluded from dismissing the indictment. Therefore, Taye's motion to dismiss will be denied without prejudice and the Court will entertain the question again when the factual record is more fully developed, perhaps at the close of the State's case-in-chief or at an another appropriate stage of this case.

The Court is also compelled to write a few additional considerations particularly to the statutory construction of the instant statute and the Criminal Code as a whole. First, it is important to note that murder against a firefighter during the performance of his or her legal duties is also a

26. *Cephas*, 911 A.2d at 801 (citing *Merriam Webster's Collegiate Dictionary*, 10th Ed.1993).

27. *Id.* at 801.

28. *Id.* at 800–01. *See also, DABCC v. Newsome*, 690 A.2d 906, 908 (Del.1996) (holding that, in a civil case, the undefined term of "grocery store" should be taken from the dictionary).

29. 11 *Del. C.* § 201(2).

30. The Court is mildly troubled by an affidavit of a parry's counsel in circumstances such as this. It appears that some of the information in it is based on discovery provided to the defendant.

31. *State v. Carletti*, 2007 WL 1098549, at *4 (Del.Super. Mar. 16, 2007).

statutory aggravating circumstance within Delaware's death penalty statute.[32] Initially, the State considered whether or not to invoke the death penalty in this case. It chose not to exercise that option. However, as long as "firefighter" is not defined, the issue in this case remains and could frustrate the intent behind the murder statute and this particular aggravating circumstance of the death penalty.

Second, the Court is also aware the Governor recently signed an amendment to 11 *Del. C.* § 636(a)(4) to add EMTs, paramedics, fire marshals and fire police officers as protected classes.[33] The Court, of course, cannot consider the new amendment in the present case.[34] Whether the new additions will effectively extend protection is a consideration that may or may not become an issue for another day. However, the Court notes, regrettably, that the term "firefighter" remains undefined and, therefore, the *de facto* definition for "firefighter" (and any other undefined word within the statute) is the definition supplied by a dictionary.

The Court is also compelled to note that HB 204 did not define who or what is included in any of the other positions added by that bill. No definitions were added to the Criminal Code. Nor does the bill reference any statutory definition for an EMT or paramedic to be found in another section of the Delaware Code.[35] Most humbly and respectfully, the amendment may have highlighted or exacerbated the problem. Definitions for all these protected persons, except for law enforcement officer, need to be addressed. Smith's activities at the accident scene were clearly within the group of persons performing official and public duties that all of these laws are intended to protect and to punish people when violated.[36]

For comparison purposes, the term "law-enforcement officer" is extensively defined within the Criminal Code in 11 *Del. C.* § 222(14).[37] The presence of a detailed definition would have been helpful in this case if the Legislature wished to qualify who would fall under the scope of "firefighter" other than having the Court rely upon the dictionary definition. With the increased sophistication of firefighting and the duties encompassed by those who are firefighters, a need may exist to update the statute to reflect the myriad

32. 11 *Del. C.* § 4209(e)(1)c.

33. House Bill 204 (signed by Gov. Markell on July 31, 2009).

34. Even in the event this recent amendment had been enacted when these events unfolded, it is interesting to note that Smith had not yet become a certified EMT but had only enrolled for such training.

35. 16 *Del. C.* § 9702; 16 *Del. C.* § 9802.

36. HB 204 was amended to indicate in the synopsis that Michele Smith was not a paramedic but was a firefighter. The Court must note that the synopsis to HB 204 is not a statute but is a guide to interpretation of the statute. While the Court acknowledges this amendment was in honor of Michele Smith, the declaration that she was a firefighter cannot be constitutionally used in a retroactive manner. Further, her status is to be determined on a record in court by a judge or jury.

37. "Law-enforcement officer" includes police officers, the Attorney General and the Attorney General's deputies, sheriffs and their regular deputies agents of the State Division of Alcohol and Tobacco Enforcement, correctional officers, state fire marshals, municipal fire marshals that are graduates of a Delaware Police Academy which is accredited/authorized by the Council on Police Training, sworn members of the City of Wilmington Fire Department who have graduated from a Delaware Police Academy which is authorized/accredited by the Council of Police Training, environmental protection officers, enforcement agents of the Department of Natural Resources and Environmental Control, and constables.

duties firefighters confront. Clearly, such a need for clarity existed in the minds of the drafters when they defined who fell into the class of "law enforcement officer." [38] This Court has found the State of Florida has a statutory definition of firefighter in its code.[39] It is much broader in scope than the traditional dictionary definition of firefighter and protects them by expanding their scope of duties. It might be a helpful starting point, because for instance, as here, so many members of fire companies respond to accident scenes where there are no fires.

*Conclusion*

For the foregoing reasons, the Defendant's Motion to Dismiss Count I of the Indictment is **DENIED WITHOUT PREJUDICE.**

38. The Court notes that members of "the City of Wilmington Fire Department who have graduated from a Delaware Police Academy which is authorized/accredited by the Council on Police Training" are law enforcement officers. 11 *Del. C.* § 222(14). However, this clause, of course, would not extend to firefighters across the state.

39. 'Firefighter' as used in the section shall mean any person employed by any public employer of this state whose duty it is to extinguish fires; to protect life or property; or to enforce municipal, county, and state fire prevention codes, as well as any law pertaining to the prevention and control of fires. *Fla. Stat. Ann.* § 784.07(1)(b) (West 2007).