**William S. DAHL, Defendant Below–Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 422, 2006.**

Supreme Court of Delaware.

Submitted: Feb. 12, 2007.
Decided: May 15, 2007.

---

Nicole M. Walker, Esq., Office of the Public Defender, Wilmington, Delaware, for Appellant.

Timothy J. Donovan, Jr., Esq., Department of Justice, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice:

Defendant–Appellant William S. Dahl appeals his Superior Court conviction of Loitering by a Sex Offender within 500 Feet of a School,[1] specifically a dance academy. Dahl was convicted at a bench trial. Dahl raises three arguments on appeal. First, Dahl contends that his due process rights were violated when the trial judge allowed the prosecutor to amend the indictment on the day of trial to expand by one month the date parameters of the alleged offense. Second, Dahl contends that the trial court erred when it denied his motion for judgment of acquittal because the State failed to present sufficient evidence from which a factfinder could conclude beyond a reasonable doubt that he was within 500 feet of a "school." Third, Dahl contends that the dance academy described at trial is not a "school" as defined in 11 Del. C. § 1112 and, therefore, his motion for judgment of acquittal should have been granted. We do not find merit to Dahl's first and second arguments. We do find, however, that the State presented insufficient evidence at trial to prove an essential element of the offense beyond a reasonable doubt; that the dance academy was a "school" as that term has been defined by the General Assembly. Because the Due Process Clause of the United States Constitution and Delaware law require proof beyond a reasonable doubt of each element of an offense, we must reverse and remand with instructions to enter a judgment of acquittal in this case.

I.

The New Castle Dance Academy ("Dance Academy") teaches dance lessons. The Dance Academy is located with other businesses in the Eden Square Shopping Center in Bear, Delaware. Next to the Dance Academy is a nail salon, and adjoining that salon is a picnic area. Stores selling pizza, sandwiches and Chinese food are also located in the shopping center. Sometime in April or May 2005, Heather Pate, a teacher at the Dance Academy, observed a man sitting in the picnic area of the shopping center watching her dance students. She had seen him there on other occasions. According to Mrs. Pate, the man made her students feel uncomfortable. Mrs. Pate called her husband, Ryan, to confront him. Mr. Pate asked the man to leave because he was making "a lot of people uncomfortable." The man replied that he was not doing anything wrong, and he continued eating his lunch in the picnic area.

After the confrontation, Mr. Pate went home, looked at the State Police sex offender registry, and found a man who looked like the one he had just confronted at the shopping center. In early June 2005, Heather and Ryan Pate reported the incident to Detective Taylor of the Delaware State Police. On the police report, Detective Taylor noted the date and time of the encounter between Mr. Pate and Dahl as May 16, 2005 at 12:30 p.m. Based on the information received from Mr. Pate, Detective Taylor obtained a warrant for Dahl's arrest on June 7, 2005. The warrant included two charges. The first charge was that Dahl violated 11 Del. C. § 1112 by loitering within 500 feet of a school "on or about the 16th of May, 2005."

---

1. 11 Del. C. § 1112(a)(2).

The second charge was that Dahl committed the offense of disorderly conduct.[2] On July 25, 2005, Dahl was indicted by a Grand Jury on a single count of violating 11 *Del. C.* § 1112.[3]

According to Dahl, he was informed at his case review that the State intended to prosecute him based on his presence at the shopping center on May 16, 2005. Because Dahl was on Home Confinement in the spring of 2005, he was able to obtain a computer printout confirming that he was home on that day at 12:30 p.m.[4]

A bench trial commenced on April 4, 2006. That morning, the State moved to amend the indictment to allege that Dahl was at the shopping center during the months of April and May 2005. Dahl contends on appeal that he objected to the amendment because the State represented at case review that he had loitered at the shopping center on May 16, 2005. The record does show that Dahl objected to the amendment and requested a continuance to further prepare a defense. A specific claim of actual prejudice is notably absent from the record, however.[5] The trial court granted the State's motion to amend, stating that "under no circumstances [would it] continue this case at this juncture."

At trial, Dahl's probation officer, Janet New, testified about Dahl's monitoring device. Dahl was on Level IV probation with a supervised ankle monitor. On the weekends, Dahl was permitted to leave his residence from 12:00 noon to 2:00 p.m. Officer New stated that on each Saturday in April and May 2005, Dahl left his home for approximately an hour and a half between the hours of 12:00 noon and 2:00 p.m. When questioned by the State, Dahl stated that on Saturdays, he usually attended Narcotics Anonymous meetings, went shopping, or did his laundry. The trial court found Dahl guilty of the charge against him and sentenced him to 20 years imprisonment pursuant to 11 *Del. C.* § 4214(a).

## II.

### A.

■■■■ Dahl first contends that the trial court violated his due process right to notice of the charge against him as well as his right to adequately prepare a defense by permitting the State to amend the in-

---

2. 11 *Del. C.* § 1301(1)(b).

3. The indictment reads:
   WILLIAM SEAH DAHL, during the month of May 2005, in the County of New Castle, State of Delaware did loiter within 500 feet of the property of the New Castle Dance Academy on more than one occasion after having been found guilty by the Superior Court of the State of Delaware for sexual offenses against children.

4. Interestingly, May 16, 2005 was a Monday.

5. The trial transcript reveals the following colloquy regarding amendment of the indictment:
   The Prosecutor: The State has moved, pursuant to Rule 7(e), to amend the indictment to include that the offense occurred during the month of April and May 2005. The indictment currently just states May 2005.
   I believe—best representation is that the defense objects to that and requests that if the Court is going to grant that amendment, that the case be continued so that the defendant can prepare, and/or the Court can evaluate, whether there's any prejudice by—the Court has indicated that Your Honor is going to hear the evidence and then rule as to whether or not the amendment was prejudicial to the defendant.
   In the event that it is prejudicial, the Court will only find the month of May as being the date and time range of the offense. Did I say that correctly?
   The Court: That is correct, and under no circumstances will I continue this case at this juncture.
   After stipulating to the fact that Dahl was a registered sex offender, defense counsel stated that the prosecutor's summary of his objection to the amendment "accurately reflect[ed] the discussion [they] had."

dictment on the day of trial. We review claims of constitutional violations *de novo.*[6]

■ The purpose of an indictment is to "put the accused on full notice of what he is called upon to defend, and to effectively preclude subsequent prosecution for the same offense."[7] Superior Court Criminal Rule 7(e) grants the trial court authority to amend an indictment at any time before the verdict so long as (1) "no new, additional, or different charge is made" and (2) "the accused will not suffer prejudice to substantial rights."[8] Further, amendment of the specific date of the charged offense in the indictment is permitted if "the date alleged in an indictment is immaterial [and] ... the date is not an essential part of the crime."[9] Here, Dahl does not contend that amendment led to a "new, additional, or different charge." Nor does Dahl contend that the date is an essential element of the crime. Instead, Dahl claims he suffered prejudice to substantial rights as a result of the amendment.

Dahl argues that he was prejudiced in two ways.[10] First, he claims that he relied on the State's alleged assertion at his case review that they were prosecuting him for his conduct on May 16, 2005. Second, Dahl contends that he did not have adequate time to prepare an alibi defense for Saturdays in April. The State answers that the specific date Dahl loitered is "immaterial and irrelevant," as the prosecution was based on Dahl's presence at the shopping center on more than one Satur-day over a period of several weeks. The State also argues that no prejudice has been shown.

We find that the record is insufficient to support Dahl's allegations of prejudice resulting from the amendment of the indictment. Although a police report referred to May 16, 2005, the record does not support Dahl's assertion on appeal of any representation at case review that this one date was the basis of the charge. To the contrary, the original indictment alleges that "William Sean Dahl, *during the month of May 2005* ... did loiter ... *on more than one occasion* ...." This indictment put Dahl on notice that he committed the offense on numerous occasions in May 2005.

We also find no record support for Dahl's contention that adding the month of April to the time parameter of the indictment substantially prejudiced him. Although counsel suggested at oral argument that had a continuance been granted Dahl could have produced documentary evidence of his whereabouts for the Saturdays throughout April, there is no record that this argument was made before the trial court.

Finally, in *Roberts v. State,*[11] we held that the amendment of an indictment did not prejudice the defendant because "his defense at trial was a total denial that the incident ever occurred."[12] At his trial, Dahl testified that he had never been to Eden Square Shopping Center in his life.

6. *Filmore v. State,* 813 A.2d 1112, 1116 (Del. 2003).

7. *Malloy v. State,* 462 A.2d 1088, 1092 (Del. 1983) (citations omitted).

8. *O'Neil v. State,* 691 A.2d 50, 55 (Del.1997); *Robinson v. State,* 600 A.2d 356, 359 (Del. 1991); *see* Super. Ct.Crim. R. 7(e) ("The court may permit an indictment or an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.").

9. *State v. Blendt,* 120 A.2d 321, 322 (Del.Super.1956); *see State v. Cole,* 78 A. 1025, 1026 (Del.Gen.Sess.1910).

10. These specific claims of prejudice were not articulated on the record below.

11. 710 A.2d 218 (Del.1998) (TABLE).

12. *Id.*

Since there is nothing to suggest that his trial strategy would have changed,[13] Dahl has not shown that he was prejudiced by the amendment of the indictment.

### B.

Dahl next contends that the trial court should have granted his motion for judgment of acquittal because no evidence was presented at trial showing the distance from the point of loitering to the Dance Academy. The trial court concluded that the distance from Dahl's alleged location to the Dance Academy was established by the prosecutor's hand-sketched diagram and by the testimony of Heather and Ryan Pate. The trial judge explained:

> [T]he only reasonable interpretation is that the school and the place where the witnesses saw the defendant were separated by a store front in a strip mall. There is sufficient evidence and, in fact, evidence beyond a reasonable doubt that the distance of one store front in a strip mall, which is not—which there has been no reason to believe is anything other than an average strip mall, is well less than 500 feet.

We review the denial of Dahl's motion for judgment of acquittal *de novo*.[14]

Expert testimony is generally not required to prove that someone is located within a specified distance from a prohibited location. For example, in *Davis v. State*,[15] an officer testified that the sale of drugs occurred *approximately* 500 feet

from the school. The officer based his estimate on three facts: "(1) [the school] is located in the three hundred block of West Sixth Street, (2) the drug sale occurred a block and a half from [the school], and (3) a city block is approximately three hundred feet long."[16] This Court concluded that "although [the officer's] testimony was not as accurate as a physical measurement, a reasonable trier of fact could have inferred the drug transaction occurred within one thousand feet of [the school] based solely on [the officer's] estimation."[17]

The evidence produced at trial was sufficient for the judge to reasonably infer that Dahl was within 500 feet of the Dance Academy. During trial, the prosecutor sketched a diagram of the shopping center. Heather Pate described the sketch as follows: "[t]here's like a building, and there's a picnic area with an open area, and then there's another one. There's a nail salon, and then we're the one right next to that." In other words, the Dance Academy was separated from the picnic area by a nail salon. It is unlikely that the nail salon is greater than 500 feet in width. Moreover, it is equally unlikely that Mrs. Pate would have been able to see Dahl from over 500 feet away with such detail that she could later positively identify him.

### C.

Dahl's final contention is that the State did not prove that the Dance Academy is a "school" as defined in 11 *Del. C.* § 1112.[18] The trial court accepted the

---

13. At oral argument, defense counsel conceded that she was unaware of any specific alibi Dahl could have asserted for the Saturdays in April.

14. *Priest v. State*, 879 A.2d 575, 577 (Del. 2005).

15. 706 A.2d 523 (Del.1998).

16. *Id.* at 524.

17. *Id.* at 525.

18. 11 *Del. C.* § 1112 provides, in pertinent part:
    (a) Any person who is a sexual offender and who:
    (1) Resides on or within 500 feet of the property of any school shall be guilty of a class G felony.
    (2) Loiters on or within 500 feet of the property of any school shall be guilty of a class F felony.
    (b) For purposes of this section, the following definitions shall apply:

prosecutor's argument and found that the statutory definition was satisfied because the Dance Academy only teaches children between the ages of 7 and 13 on Saturdays.[19] The State reiterates this argument on appeal. We review questions involving statutory interpretation *de novo*.[20]

Section 1112(b)(2) defines a school as "any preschool, kindergarten, elementary school, secondary school, vocational technical school or any other institution *which has as its primary purpose the education or instruction of children under 16 years of age*."[21]

Although it is certainly possible that a dance studio may meet the statutory definition of a school, the State failed to produce sufficient evidence to prove that essential element in this case. The State was required to prove that the *primary purpose* of the Dance Academy was to educate or instruct children under the age of 16. Because "primary purpose" is not defined by the statute, we must look to the commonly accepted meaning of the term.[22] "Primary" has been defined as "first or highest in rank, quality, or importance; principal."[23] "Purpose" has been defined as "the object toward which one strives or for which something exists; an aim or goal."[24] In other words, the State was required to prove that the principal object of the Dance Academy was to teach children under 16. The only evidence of the purpose of the Dance Academy in the record is the testimony of Mrs. Pate, who testified as follows:

Q: Okay, and what type of business is conducted there?

A: We teach dance lessons.

Mrs. Pate also explained who her own students were as follows:

Q: And who do you teach dance lessons to?

A: Children. Actually, I teach ages 2 to adult myself.

Q: 2 to adult.

A: Uh-huh.

---

(1) "Loiter" means:

a. Standing, sitting idly, whether or not the person is in a vehicle, or remaining in or around school property, while not having reason or relationship involving custody of or responsibility for a pupil or any other specific or legitimate reason for being there; or

b. Standing, sitting idly, whether or not the person is in a vehicle, or remaining in or around school property, for the purpose of engaging or soliciting another person to engage in sexual intercourse, sexual penetration, sexual contact, or sexual harassment, sexual extortion, or indecent exposure.

(2) "School" means any preschool, kindergarten, elementary school, secondary school, vocational technical school or any other institution which has as its primary purpose the education or instruction of children under 16 years of age.

19. The trial court explained its ruling as follows:

The next question is whether or not the New Castle Dance Academy is a school defined by Section 1112, Subsection 2.... The testimony on this fact is the testimony of Heather Pate. She is a teacher at the New Castle Dance Studio and she stated that on Saturdays, which is when she testified she saw the defendant, children between the ages of 7 and 13 are taught at the studio. Therefore, the Court finds that the school falls within the relevant definition of "school" under Section 1112.

20. *Delaware Bay Surgical Svcs., P.C. v. Swier,* 900 A.2d 646, 652 (Del.2006).

21. 11 *Del. C.* § 1112(b)(2) (emphasis added).

22. 11 *Del. C.* § 221(c) ("If a word used in this Criminal Code is not defined herein, it has its commonly accepted meaning, and may be defined as appropriate to fulfill the purpose purposes of the provisions as declared in § 201 of this title.").

23. *See* The American Heritage Dictionary of the English Language (4th ed. 2000).

24. *Id.*

Q: On Saturdays, at around lunchtime, was there a particular group that would be getting education and learning how to dance?

A: Yes. We were putting on the Nut Cracker, so we had like rehearsals at that time.

Q: Okay, and how old were the children on Saturdays at around lunchtime?

A: They ranged from 7 to probably 13.

Based on this testimony, it is apparent that both children *and adults* receive dance instruction at the Dance Academy from more than one instructor. Although Mrs. Pate teaches children, the Dance Academy's business is to teach dance lessons. The State's argument that the Dance Academy is a "school" as defined by the statute because Mrs. Pate taught children under the age of 16 *on Saturdays* is unavailing. A focus upon the activities of one teacher on one day of the week, without more, does not show that the primary purpose of the Dance Academy was to educate or instruct children under 16. At a minimum, the evidence (or lack thereof) raised a reasonable doubt as to whether the Dance Academy was a "school" as defined by 11 *Del. C.* § 1112.

Proof beyond a reasonable doubt is a fundamental principle of the criminal law. As the United States Supreme Court has explained, the reasonable-doubt standard is a "prime instrument for reducing the risk of convictions resting on factual error."[25] In addition, "the reasonable-doubt standard is indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.'"[26] The Due Process Clause of the United States Constitution requires that criminal convictions be supported by proof beyond reasonable doubt of all the elements of an offense.[27] This "widely recognized federal mandate" was acknowledged and codified by the Delaware General Assembly in 11 *Del. C.* § 301(b).[28] In this case, the only evidence of the primary purpose of the Dance Academy was "we teach dance lessons." Although evidence was presented that children under 16 were taught by one teacher on Saturdays, this in itself did not show that the primary purpose of the Dance Academy was "education or instruction of children under 16 years of age."

### III. Conclusion

The State produced insufficient proof that the Dance Academy is a "school" as defined by 11 *Del. C.* § 1112. Because there was insufficient evidence presented to establish an essential element of the crime charged beyond a reasonable doubt, the judgment of the Superior Court is REVERSED and the matter is REMANDED with instructions to enter a judgment of acquittal.[29]

25. *Winship*, 397 U.S. at 363, 90 S.Ct. 1068.

26. *Id.* at 364, 90 S.Ct. 1068.

27. *State v. Grace*, 286 A.2d 754, 755 (Del. 1971) ("[T]he Supreme Court of the United States, in *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), held [e]xplicitly that the Due Process Clause of the Federal Constitution 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'").

28. *Priest*, 879 A.2d at 581 n. 20; 11 *Del. C.* § 301(b) ("No person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.").

29. *Weber v. State*, 547 A.2d 948, 961 (Del. 1988).