# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
    )
    v.     )     ID No. 1602012206
    )
ROBERT L. SMITH,     )
    )
    Defendant.     )

## MEMORANDUM OPINION

Submitted: March 18, 2024
Decided: April 11, 2024

*Upon Consideration of the Commissioner's Report and Recommendation on Defendant's Motion for Postconviction Relief*,
**ADOPTED**

*Upon Consideration of Defendant's Motion for Postconviction Relief*,
**DENIED**

Andrew J. Vella, Esquire, Chief of Appeals, Delaware Department of Justice, Wilmington, Delaware, Attorney for the State.

Edward C. Gill, Esquire, Law Offices of Edward C. Gill, P.A., Wilmington, Delaware, Rule 61 Counsel for Defendant Robert Smith.

**JURDEN, P.J.**

## I.    INTRODUCTION

On August 30, 2017, Defendant Robert Smith ("Smith") pled Guilty But Mentally Ill ("GBMI") to Murder First Degree and Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF") for the fatal stabbing of his girlfriend, Igna Coffee Young ("Young").[1]  He now moves for Postconviction Relief under Superior Court Criminal Rule 61 ("Rule 61 Motion").[2]  For the reasons set forth below, the Commissioner's Report and Recommendation ("Commissioner's Report") is **ADOPTED,** and Smith's Motion for Postconviction Relief is **DENIED**.

---

[1] D.I. 24.

[2] D.I. 28. Smith's Rule 61 Motion was amended on April 30, 2019 with the help of Rule 61 Counsel. D.I. 47.

## II. BACKGROUND AND PROCEDURAL HISTORY

A. Factual Background

On February 18, 2016, Young's daughter arrived at her leased apartment located at 2305 Tatnall Street in the City of Wilmington to find her father, Smith, sitting on the steps to her apartment holding Young's cell phone.[3] Smith told Young's daughter that he was locked outside and Young was dead inside.[4] Young's daughter entered the residence and found her mother's body lying in a pool of blood on the floor.[5] Young had been repeatedly stabbed with a screwdriver lying beside her body.[6] As Young's daughter attempted to help her mother, Smith grabbed his daughter's car keys and fled the residence in the daughter's 2003 Dodge Stratus.[7] Shortly after leaving the scene, Smith admitted to a witness, "I killed that bitch . . . just playing."[8] At the time of Young's death, Smith was Young's boyfriend.[9] The Delaware State Police located Smith driving the Dodge Stratus northbound on I-95 in the area of Route 273, southwest of the city of Wilmington.[10] A chase ensued, resulting in Smith crashing the car on Linden Street.[11] Upon being removed from

---

[3] D.I. 61.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] D.I. 61.
[9] *Id.*
[10] *Id.*
[11] *Id.*

the vehicle, officers noticed Smith's sweatshirt, black boots, and khaki pants appeared stained in blood.[12]  He was arrested later that night for Young's murder.[13]

B. Procedural History

On May 23, 2016, a grand jury indicted Smith for Murder First Degree, PDWDCF, Disregarding a Police Officer's Signal, and Resisting Arrest.[14]  On August 30, 2017, Smith pled GBMI to Murder First Degree and PDWDCF.[15]

On October 9, 2017, Smith submitted a letter requesting to withdraw his plea on the basis that there was a defect in his indictment.[16]  Trial Counsel met with Smith on October 19, 2017 to discuss his request to withdraw.[17]  Smith's basis to withdraw was the fact the victim's name was spelled incorrectly.[18]  Trial Counsel advised Smith that, based on his research, it appeared that a typographical error was not a valid basis to withdraw a guilty plea.[19]

On November 2, 2017, the case proceeded to sentencing where Smith was sentenced as follows: for Murder First Degree (IN-16-03-0040), the balance of his

---

[12] *Id.*
[13] *Id.*
[14] D.I. 2.
[15] D.I. 24. Following Smith's plea colloquy, Trial Counsel received a letter from Smith dated August 30, 2017, in which Smith expressed concern about his mistaken belief that he had pled guilty to two counts of PDWDCF instead of one. D.I. 59.  Trial Counsel met with Smith on September 15, 2017 and clarified that Smith had pled to one count of PDWDCF instead of one. D.I. 59.
[16] D.I. 59.
[17] *Id.*
[18] *Id.*
[19] *Id.*

natural life at Level V; for PDWDCF (IN16-03-0041), 25 years at Level V followed by 6 months at Level III.[20]

On November 16, 2017, Smith appealed his conviction to the Delaware Supreme Court.[21] Shortly thereafter, on November 27, 2017, Smith filed a *pro se* Rule 61 Motion seeking to withdraw his guilty plea and raising claims of ineffective assistance of counsel ("IAC").[22] On December 6, 2017, the Court sent a letter to Smith informing him that his Rule 61 Motion would be deferred until the Supreme Court issued a decision on appeal.[23] On May 17, 2018, the Delaware Supreme Court affirmed Smith's conviction.[24]

On August 29, 2018, the Court requested supplemental information for Smith's Rule 61 Motion and ordered such information be provided by November

---

[20] D.I. 26. At the time of his sentencing, Smith was on probation for Assault First Degree, Assault Second Degree, and Possession of a Deadly Weapon by a Person Prohibited ("PDWBPP"). D.I. 89 in Case No. K0304017352A. During his sentencing, he was found in violation of his probation ("VOP") and was sentenced as follows: for Assault First Degree VOP, seven years at Level V, suspended for 6 years at Level V, followed by 1 year at Level III; for Assault Second Degree VOP, conditional release is revoked, defendant shall lose previously earned good time and meritorious good time, and will serve the balance of the sentence from which he was released; for PDWBPP VOP, conditional release is revoked, defendant shall lose previously earned good time including meritorious good time, and he will serve the balance of the sentence from which he was released. *Id*.
[21] D.I. 27.
[22] D.I. 28.
[23] D.I. 32.
[24] D.I. 40. Smith's appellate counsel filed a motion to withdraw after finding no appealable issues. *Smith v. State*, 187 A.3d 550 (TABLE) (Del. May 17, 2018). Appellate counsel advised Smith of his right to appeal. *Id*. Smith did not raise any issues before the Supreme Court. *Id*.

26, 2018.[25] On November 16, 2018, Smith requested an extension of time to respond until he procured postconviction counsel to assist him in his Rule 61 Motion.[26] On January 7, 2019, the Court granted Smith an extension of time to respond until May 6, 2019.[27]

On April 30, 2019, with assistance from Rule 61 Counsel, Smith filed an Amended Rule 61 Motion.[28] Smith's Amended Rule 61 Motion was referred to a Commissioner for a Report and Recommendation on May 15, 2019.[29]

On August 29, 2019, the Court issued a briefing schedule, which was subsequently amended on September 20, 2019.[30] On November 15, 2019, Trial Counsel filed a joint affidavit responding to Smith's allegations of IAC raised in the Amended Motion, denying all three grounds.[31] The State submitted a response to the Amended Motion on December 16, 2019.[32] On January 14, 2020, Smith filed a reply to the State's response and requested an evidentiary hearing.[33]

On September 24, 2020, the Court granted Smith's request for an evidentiary hearing and directed Trial Counsel to provide the Court with copies of (i) any

---

[25] D.I. 41. The Court in a letter asked Smith to submit supplemental information for his postconviction relief motion to explain why Smith believes he is entitled to postconviction relief.
[26] D.I. 42.
[27] D.I. 43.
[28] D.I. 47.
[29] D.I. 48.
[30] D.I. 54, 58.
[31] D.I. 59. Andrew Meyers, Esq. and Dean DelCollo, Esq., jointly served as Smith's Trial Counsel.
[32] D.I. 61.
[33] D.I. 62.

communications in which Smith specifically requested to proceed to trial or withdraw his plea and (ii) any correspondence or memoranda in which Trial Counsel analyzed the evidence and assessed the risks associated with trial and/or explained the benefits of the plea agreement to Smith.[34] On September 16, 2021, an evidentiary hearing was held at which Smith testified.[35]

A second evidentiary hearing was held on October 25, 2021, at which time the State called Trial Counsel, Dean DelCollo, Esq., to testify regarding his communications with Smith prior to Smith accepting the plea.[36] Following the hearing, the Court directed the State to address the language set forth in 11 *Del. C.* § 408(a) in its supplemental briefing in light of the *Taylor v. State* decision.[37] The State submitted its supplemental briefing on November 18, 2021, and Smith filed a reply on December 8, 2021.[38]

---

[34] D.I. 67. For clarity on the timeline, on March 12, 2020, the Governor declared a State of Emergency for Delaware due to the threat of COVID-19, which was extended numerous times through July 13, 2021. A judicial emergency went into effect on March 16, 2020, which was extended multiple times until it was lifted on July 13, 2021. No in-person hearings of this nature were permitted during the judicial emergency.

[35] D.I. 70.

[36] D.I. 74.

[37] 213 A.3d 560 (Del. 2019); D.I. 74. Because Smith did not file an objection to the Commissioner's decision on the argument pertaining to 11 *Del. C.* § 408(a), the Court will not address it here.

[38] D.I. 77-81.

The Court held a third evidentiary hearing to obtain the testimony of Andrew Meyers, Esq., on June 29, 2023.[39] The State requested to supplement its previous response on the issue of Section 408, which the Court granted.[40] The State filed its supplemental response on September 1, 2023, and Smith filed a final response on September 25, 2023.[41]

On December 31, 2023, the Commissioner filed her Report, denying Smith's Rule 61 Motion.[42] Smith submitted an appeal from the Commissioner's Report on January 9, 2024.[43] The Court requested the State submit a response to Smith's appeal on January 18, 2024.[44] On March 18, 2024, the State submitted a response.[45]

### C. Smith's Objections to the Commissioner's Findings

- The Commissioner's finding that the decision to take the GBMI plea to Murder First Degree was Smith's as opposed to his Trial Counsels'
- The Commissioner's finding that Smith did not suffer constitutionally IAC due to Trial Counsels' handling of his request to withdraw his guilty plea
- The Commissioner's finding that Smith did not suffer constitutionally IAC when he did not obtain any benefit from his guilty plea

---

[39] D.I. 82, 85. The delay for the evidentiary hearing was due to Trial Counsel's work-related conflicts and Rule 61 Counsel's health issues. Additionally, the case had to be reassigned to a new DAG. *See* D.I. 83-84.
[40] D.I. 83-84.
[41] D.I. 87, 88.
[42] D.I. 89.
[43] D.I. 90.
[44] D.I. 91.
[45] D.I. 92.

### III.    STANDARDS OF REVIEW

Under 10 *Del. C.* § 512(b)(1), the Court may designate a commissioner to review a postconviction relief motion and provide a report and corresponding recommendation to the Court.[46]    Following the issuance of a report and recommendation, any party may file timely objections to the Commissioner's findings.[47]    In reviewing a party's objections, the Court "shall make a *de novo* determination of those portions of the report or specified findings of fact or recommendations to which an objection is made."[48]    The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the Commissioner."[49]

#### A.    Rule 61: Procedural Bars to Relief

Superior Court Criminal Rule 61 governs postconviction relief motions.[50] Under Rule 61, an incarcerated individual may seek abrogation of his conviction by establishing a lack of jurisdiction or alternative ground that sufficiently establishes a factual and legal basis for a collateral attack upon the conviction.[51] While Rule 61

---

[46] 10 *Del. C.* § 512(b)(1)b.
[47] 10 *Del. C.* § 512(b)(1)d.
[48] *Id.*; *State v. Bartell*, 2020 WL 6480845, at *1 (Del. Super. Nov. 4, 2020).
[49] *Id.*
[50] Super. Ct. Crim. R. 61(a)(1).
[51] *Id.*

is designed to cure constitutional infirmaries, it does not provide defendants unlimited opportunity to relitigate their convictions.[52]

Before considering the merits of any postconviction relief motion, the Court to first evaluate whether any procedural bars exist.[53] Rule 61(i) establishes four procedural bars to postconviction relief.[54] Rule 61(i)(1) requires a motion for postconviction relief must be filed within one year of a final judgment or conviction.[55] Rule 61(i)(2) bars successive motions for postconviction relief unless certain conditions are met.[56] Pursuant to Rule 61(i)(3) and (4), any ground for relief not previously raised is deemed waived and any claims formerly adjudicated are thereafter barred.[57]

There is an exception to the Rule 61(i)(3) procedural bar to relief. Procedural default may be overcome if the movant shows "(A) cause for relief from the procedural default and (B) prejudice from violation of the movant's rights."[58] A

---

[52] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[53] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[54] Super. Ct. Crim. R. 61(i)(1)-(4).
[55] Super. Ct. Crim. R. 61(i)(1).
[56] Rule 61(i)(2) bars successive or subsequent motions for postconviction relief unless the movant is able to "pled with particularity" that (i) "new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted" or (ii) "a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid." Super. Ct. Crim. R. 61(d)(2).
[57] This includes proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding. *See* Super. Ct. Crim. R. 61(i)(5), (d)(2)(i), (ii).
[58] Super. Ct. Crim. R. 61(i)(3)A, B.

"cause" for procedural default can be shown through IAC.[59]  Because IAC claims cannot be raised at any earlier stage in the proceedings, they are properly presented through a postconviction relief motion.[60]

## B. Rule 61: Ineffective Assistance of Counsel

To succeed under an IAC claim, a defendant must meet the two-part test laid out in *Strickland v. Washington*.[61]  That is, the defendant must demonstrate that: (1) trial counsel's performance was objectively unreasonable,[62] and (2) if counsel was deficient, there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[63]

The *Strickland* standard is highly demanding and leads to a strong presumption that counsel's conduct fell within a wide range of reasonably professional assistance.[64]  Mere allegations of ineffectiveness are not enough.[65] Counsel "may not be faulted for reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."[66]  There is a strong

---

[59] *Younger*, 580 A.2d at 556.
[60] *Sabb v. State*, 2021 WL 2229631, at *1 (Del. May 28, 2021); *Green v. State*, 238 A.3d 160, 187-188 (Del. 2020); *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).
[61] 466 U.S. 668, 694 (1984).
[62] *Sykes v. State*, 147 A.3d 201, 211 (Del. 2015) (citing *Strickland*, 466 U.S. at 694).
[63] *Strickland*, 466 U.S. at 694.
[64] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988); *Salih v. State*, 2008 WL 4762323, at *1 (Del. 2008).
[65] *Younger*, 580 A.2d at 556.
[66] *State v. Finn,* 2012 WL 1980566, at *4 (Del. Super. May 23, 2012) (citing *Harrington v. Richter,* 562 U.S. 86, 102-110 (2011)).

presumption that a defense counsel's conduct constituted sound trial strategy,[67] and a defendant must make and substantiate concrete allegations that overcome this presumption.[68] When reviewing a defendant's allegations of deficient counsel, the reviewing court must "avoid peering through the lens of hindsight."[69] The "[b]enchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[70]

## IV.   DISCUSSION

In her forty-two-page Commissioner's Report, after detailing why Smith fails to establish he is entitled to postconviction relief, the Commissioner concludes:

> Smith's plea represented a rational choice given the pending charges, the evidence against him, and the possible sentences he was facing. Smith entered into his plea knowingly, intelligently, and voluntarily. The Court finds that defense counsel was not deficient in failing to bring forth Smith's request for a motion to withdraw guilty plea because the facts suggest he had abandoned that desire. Moreover, given that the basis of Smith's request would not have qualified as a fair and just reason for withdrawal under Superior Court Criminal Rule 32(d), the Court finds that Smith did not suffer any prejudice for the failure to bring such a motion would satisfy *Strickland*. And finally, the Court finds that Smith's plea inured to his benefit. Accordingly, Smith's ineffective assistance of counsel claims are without merit.[71]

---

[67] *Strickland*, 466 U.S. at 694.
[68] *See Salih*, 962 A.2d at 257; *see also Albury*, 551 A.2d at 59.
[69] *State v. Wright,* 653 A.2d 288, 295 (Del. Super. 1994).
[70] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009) (internal quotations omitted).
[71] Comm. Rep. at 41.

Because this is Smith's first Rule 61 Motion and it is timely, the Court now addresses each of Smith's Objections to the Commissioner's Report in turn.

### A. Smith's Objection that it was His Decision to Take the GBMI Plea is Without Merit

Smith claims that the evidentiary record supports his contention that he expressed his desire not to accept the GBMI plea and instead wished to go to trial.[72] He argues that he specifically requested to go to trial on July 25, 2017 and August 17, 2017, and that Trial Counsel violated his absolute right to decide whether to take a plea.[73] Additionally, he argues that had he gone to trial, he could have done so under the Extreme Emotional Distress ("EED") defense and could have potentially been convicted of Manslaughter rather than Murder First Degree.[74]

In Defense Counsels' Affidavit in Response to Smith's Rule 61 Motion, Trial Counsel state that they met with Smith at least twenty-six times—at the Howard R. Young Correction Institute and during Smith's scheduled court appearances.[75] Trial Counsel state that in their discussions with Smith, they detailed the benefits and drawbacks of going to trial versus resolving the matter through a plea bargain, as well as potentially viable defenses.[76] Trial Counsel informed Smith that there was a

---

[72] Appeal from the Commissioner's Findings of Facts and Recommendation at 1.
[73] *Id.*
[74] *Id.* at 1-2.
[75] D.I. 59.
[76] *Id.*

significant mandatory minimum if convicted of all counts in the indictment.[77]  While Trial Counsel admit that Smith had reservations about entering into the plea, Trial Counsel averred in their sworn affidavit that it was ultimately Smith's decision to enter the plea at the August 30, 2017, plea colloquy.[78]

Trial Counsel averred in their affidavit that they discussed the possibility of raising an EED defense at Smith's trial and how it could potentially result in a conviction of Manslaughter rather than Murder First Degree which could lead to a sentence of anywhere from 50 years minimum up to life imprisonment.[79]  However, Trial Counsel also informed Smith, that based on his prior record, he was eligible to be a habitual offender which would lengthen his conviction exponentially.[80]

Trial Counsel attest that when Smith decided to take the plea, he understood that by pleading GBMI he was likely to receive better access to quality psychiatric treatment, he wished to accept responsibility for his actions, and he did not want to put his family through a trial.[81]

In *Somerville v. State*, the Supreme Court laid out the numerous protections defendants have throughout the guilty plea process:

---

[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] *Id.*

[p]rior to accepting a guilty plea, the trial judge must address the defendant in open court. The judge must determine that the defendant understands the nature of the charges and the penalties provided for each of the offenses. The record must reflect that the defendant understands that the guilty plea constitutes a waiver of a trial on the charges and a waiver of the constitutional rights to which he or she would have been entitled to exercise at a trial. The trial judge must also determine that a guilty plea is not the result of force, threats, or promises apart from the plea agreement, i.e., is voluntary.[82]

"[A] defendant's statements to the Superior Court during the guilty plea colloquy are presumed to be truthful."[83] These representations made during the plea colloquy create a "formidable barrier in any subsequent collateral proceedings."[84]

In the plea hearing on August 30, 2017, Smith and the prosecution acknowledged that they had reached an agreement with the Court.[85] The Plea Agreement was signed by both parties and submitted to the Court.[86] At sentencing, Trial Counsel addressed the Court and affirmed that they went over the Truth-In-Sentencing Guilty Plea form with Smith and they explained all the rights that he was giving up.[87] Trial Counsel stated that Smith was informed that by pleading to Murder First Degree the sentence was a mandatory minimum sentence of life

---

[82] 703 A.2d 629, 631 (Del. 1997).
[83] *Id*. at 632.
[84] *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).
[85] D.I. 24.
[86] *Id*.
[87] *Id*. at 5.

imprisonment without the possibility of parole and that he could face anywhere between 2 to 25 years for the PDWDCF charge.[88]

The Court then addressed Smith in open court and after a thorough colloquy determined that Smith was entering the plea, knowingly, intelligently, and voluntarily.[89] The exchange between the Court and Smith was as follows:

> THE COURT: You reviewed [] [the Truth-in-Sentencing Guilty Plea Form and copy of the Plea Agreement] carefully with your attorneys; correct?
> THE DEFENDANT: Yes.
> THE COURT: And you understood all the questions on those forms?
> THE DEFENDANT: Yes.
> THE COURT: And did you sign the forms at the bottom?
> THE DEFENDANT: Yes.
> THE COURT: All right. I'm going to walk through the plea with you. You wish to plead Guilty But Mentally Ill to the charge in Count 1 of Murder in the First Degree; is this correct?
> THE DEFENDANT: Yes.
> . . .
> THE COURT: So it's charged—the indictment, which is the charging document, charges you as follows: Robert Smith, on or about the 18th day of February 2016, in the County of New Castle, State of Delaware, did intentionally cause the death of Igna Coffey . . . by stabbing her multiple times. How do you wish to plead to this charge?
> THE DEFENDANT: Guilty.
> THE COURT: But mentally ill.
> THE DEFENDANT: But mentally ill.

---

[88] *Id*. at 6.
[89] *Id*.

THE COURT: Count 2 charges you with Possession of a Deadly Weapon During the Commission of a Felony. It's alleged that you on or about the 18th day of February, 2016 in New Castle County, Delaware knowingly and unlawfully possessed a screwdriver, a dangerous instrument used to cause death, a deadly weapon, as defined under Delaware law. How do you wish to plead to this crime?

THE DEFENDANT: Guilty But Mentally Ill.

. . .

THE COURT: Have I now just reviewed with you the entire written plea agreement?

THE DEFENDANT: Yes.

THE COURT: Has anybody promised you what your sentence will be?

THE DEFENDANT: No.

. . .

THE COURT: Are you freely and voluntarily deciding to plead Guilty But Mentally Ill to the charge of Murder in the First Degree and Possession of a Deadly Weapon During the Commission of a Felony?

THE DEFENDANT: Yes.

THE COURT: Have you been promised anything not stated in the written plea agreement?

THE DEFENDANT: No.

THE COURT: Has anybody threatened or forced you to enter into this plea?

THE DEFENDANT: No.

. . .

THE COURT: And you understand that by pleading Guilty But Mentally Ill you're not going to have a trial on the charges in the indictment?

THE DEFENDANT: Yes.

THE COURT: And you understand that because you're not going to have a trial and you're entering a plea, if your plea is accepted you're giving up all of those constitutional rights?

THE DEFENDANT: Yes.

THE COURT: And you wish to do that because you believe after thought and reflection and consultation with

your attorneys that it's in your best interest to accept this plea and enter a plea of Guilty But Mentally Ill rather than go to trial; is that correct?

THE DEFENDANT: Yes.

THE COURT: Do you feel you need any more time to make that decision?

THE DEFENDANT: No.

. . .

THE COURT: Has anyone promised you what your sentence will be?

THE DEFENDANT: No.

THE COURT: Okay. And you understand that the minimum mandatory penalty here is life in prison?

THE DEFENDANT: Yes.

. . .

THE COURT: Are you satisfied with your lawyers' representation of you and that they fully advised you of your rights?

THE DEFENDANT: Yes.

THE COURT: And just to reiterate, you carefully read the Truth-In-Sentencing Guilty Plea Form and the plea agreement; correct?

THE DEFENDANT: Yes.

THE COURT: And you understood them?

THE DEFENDANT: Yes.

THE COURT: And you answered all the questions put to you by these forms truthfully after you read them and understood them?

THE DEFENDANT: Yes.

THE COURT: And all your answers here today to me have been truthful; correct?

THE DEFENDANT: Yes.[90]

---

[90] *Id*. at 10-20.

Smith stated that he was entering his guilty plea freely and voluntarily, no one threatened or coerced him to accept the plea, and he believed after thought, reflection and consultation with his Trial Counsel, it was in his best interest to accept the plea.[91]

"In absence of clear and convincing evidence to the contrary," Smith is bound by his answers on the Truth-in-Sentencing Guilty Plea Form and by his answers during the plea colloquy.[92] Smith's statements that he did not wish to enter into the plea and felt coerced to do so are insufficient grounds to withdraw the plea.[93] The Court had a thorough colloquy with Smith about his GBMI plea, during which Smith expressed a clear desire to enter into the plea.[94] The decision to accept a plea rests solely with the defendant, and based on the colloquy, the Court was—and remains— satisfied that Smith knowingly, intelligently, and voluntarily made the decision to accept the plea.[95]

Smith's assertion that he did not want to take the plea directly conflicts with the statements he made at sentencing. While Smith produces his notebook as evidence that he showed uncertainty in two instances about taking the plea, this does

---

[91] *Id.*

[92] *State v. Melendez*, 2003 WL 23095688, at *4 (Del. Super. Dec. 19, 2003).

[93] *Id.* ("[A] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea. Nor should they be permitted to vacate a guilty plea after sentence has been imposed.") (internal quotations and citations omitted).

[94] *See* D.I. 24.

[95] *Cooke*, 977 A.2d 803, 843 (holding that a defendant has a fundamental right to decide to enter into a plea).

not demonstrate that it was Trial Counsels' decision to take the plea, not Smith's. To the contrary, Smith's statements during his plea colloquy demonstrate that he entered into the plea willingly and on his own volition.[96] Additionally, during the plea colloquy, Smith stated that he was satisfied with his Trial Counsels' representation of him.[97]

When the Court finds that a defendant's contentions are adequately and appropriately addressed at a plea colloquy, the defendant is bound by his in-court representations.[98] Smith affirmatively answered through extensive questioning that he wanted to enter into the GBMI plea and did so. Therefore, the Court affirms the Commissioner's finding that it was Smith's decision to enter into his plea and not his attorneys'.

B. Ineffective Assistance of Counsel Claims

i. *Trial Counsels' decision not to withdraw Smith's guilty plea*

Smith argues that he suffered constitutionally ineffective assistance of counsel due to Trial Counsels' decision not to submit a motion to withdraw his guilty plea. To prevail under Rule 61, Smith must show there was cause for relief and prejudice from the violation of his rights.[99]

---

[96] D.I. 24.
[97] *Id.*
[98] *State v. Harman*, 2020 WL 17829962, at *1 (Del. Super. Dec. 20. 2022).
[99] Super. Ct. Crim. R. 61(i)(3).

After entering his plea on August 30, 2017, Smith wrote a letter to Trial Counsel, dated October 9, 2017, requesting to withdraw his plea and relayed that same request in person to Trial Counsel on October 19, 2017.[100] On October 19, 2017, Trial Counsel informed Smith that he had no legal basis to withdraw his guilty plea.[101]

"When the defendant is represented by counsel, the authority to manage the day-to-day conduct of the defense rests with the attorney."[102] However, "certain decisions regarding the exercise or waiver of basic trial and appellate rights are so personal to the defendant that they cannot be made for the defendant by a surrogate."[103]

The Delaware Supreme Court held in *Reed* that "a criminal defendant's control of the objective of the representation prior to sentencing requires that counsel either obey an instruction to file a motion to withdraw a guilty plea, or seek leave to withdraw so that the defendant can file a motion with other counsel or *pro se* . . . . Even if counsel believes the defendant's motion is contrary to his interest or is without merit, a defendant's decision to attempt to withdraw a plea prior to sentencing cannot be overruled by counsel."[104] Because Reed's counsel did not file

---

[100] D.I. 47 at 3.
[101] D.I. 37 at 3.
[102] *Cooke*, 977 A.2d at 840.
[103] *Id.*
[104] *Reed v. State*, 258 A.3d 807, 829 (Del. 2021).

a pre-sentence motion to withdraw his guilty plea and he did not rescind his request, his trial counsel's refusal constituted deficient performance under *Strickland*.[105]

In this case, Smith clearly indicated that he wished to file a motion to withdraw his guilty plea, did not rescind his request, and Trial Counsel did not file a motion to withdraw as counsel or withdraw the guilty plea.[106] Thus, pursuant to *Reed*, Trial Counsel were deficient under *Strickland*. However, the analysis does not stop there, because as outlined in *Reed*, Smith must still satisfy the second *Strickland* inquiry and show that Trial Counsels' failure to file the motion caused him prejudice.[107]

To satisfy the second prong in *Strickland*, Smith "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[108] A reasonable probability as defined here means that the "probability is sufficient to undermine the confidence in the outcome," which is a lower standard than the "more likely than not" standard.[109]

---

[105] *Id*. at 828.
[106] While the Commissioner in her Report finds it convincing that the fact that Smith did not continue to request a motion to withdraw the plea is an indication that Smith abandoned his desire to withdraw, the Court is unconvinced. There is no clear indication that Smith decided to withdraw, and the fact that Smith did not file a *pro se* motion with the Court to withdraw while still represented by counsel is not a defining factor of whether he abandoned his desire. The Court here gives the benefit of the doubt to Smith based on the factors in this case.
[107] *Id*. at 829.
[108] *Starling v. State*, 130 A.3d 316, 325 (Del. 2015) (quoting *Strickland*, 466 U.S. at 694).
[109] *Id*.

This likelihood of a different result "must be substantial, not just conceivable."[110] Thus, Smith must show that there is some reasonable probability that he would have continued to trial *and* that the Court would have granted his motion to withdraw his plea.[111]

Under Rule 32(d), the Court may allow the withdrawal of a guilty plea so long as the defendant makes a showing that there is a "fair and just reason."[112] The decision to grant a motion to withdraw a guilty plea rests at the discretion of the Court.[113] The Court "must give due weight to the proceedings by which the plea was taken and the presumptively truthful statements the defendant made in the colloquy."[114] There are five questions the Court must examine in reaching its decision:

> (1) Was there a procedural defect in taking the plea; (2) Did [defendant] knowingly and voluntarily consent to the plea agreement; (3) Does [defendant] presently have a basis to assert legal innocence; (4) Did [defendant] have adequate legal counsel throughout the proceedings; and (5) Does granting the motion prejudice the State or unduly inconvenience the Court.[115]

---

[110] *Id.*
[111] *Reed*, 258 A.3d at 829-30.
[112] Super. Ct. Crim. R. 32(d).
[113] *State v. Insley*, 141 A.2d 619, 622 (Del. 1958).
[114] *Reed*, 258 A.3d 830.
[115] *Scarborough v. State*, 938 A.2d 644, 649 (Del. 2007) ("These factors are not factors to be balanced; indeed, some of the factors of themselves may justify relief.").

Smith does not set forth any basis on which a motion to withdraw his guilty plea would have been accepted by the Court in evaluating these questions. Rather, he argues he was prejudiced because "he was not permitted the opportunity to litigate his Motion to Withdraw his Guilty Plea and move forward to Trial to assert his defenses and hold the State to its burden of proof."[116] This does not provide a basis for the Court to grant a motion to withdraw his guilty plea in light of the plea colloquy the Court held with Smith. Because Smith's statements are presumed to be true based on his representations at the plea colloquy, the Court does not find a sufficient basis to grant a withdrawal of his guilty plea.

Further, to the extent Smith argues that there was a typographical error in his indictment, the Court does not find this would be a sufficient basis to grant a motion to withdraw a guilty plea. "The purpose of an indictment is to put the accused on full notice on what he is called to defend, and to effectively preclude subsequent prosecution for the same offense."[117] The Court is unconvinced that a typographical error in the indictment would have provided a basis for Smith to withdraw his guilty plea.[118] Rather, Smith's statements during the plea colloquy would have provided a much stronger argument for keeping the plea in place.[119] As correctly stated by the

---

[116] Appeal to the Commissioner's Findings of Facts and Recommendations at 2-3.
[117] *White v. State*, 243 A.3d 381, 408 (Del. 2020) (citing *Dahl v. State*, 926 A.2d 1077, 1081 (Del. 2007)).
[118] D.I. 24.
[119] *Id*.

State, the misspelling of the victim's name in the indictment does not satisfy the significant burden required to demonstrate a fair and just reason for withdrawing a guilty plea.[120]

Smith fails to satisfy the prejudice prong of the *Strickland* analysis, and thus this claim lacks merit.

### ii. Smith's benefit from the guilty plea

The second ground upon which Smith brings an IAC claim is that Trial Counsel were ineffective for failing to provide Smith with any benefit from his plea. In support of his argument, Smith states that had he gone to trial and been found guilty of every offense, he would have received the exact same life imprisonment without parole that he received through his guilty plea.[121] He further points out that he received more time on his sentence because the State violated him on the probation he was serving, thus demonstrating that he received no benefit from the plea.[122]

The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action

---

[120] *See* State's Response to Defendant's Appeal to the Commissioner's Findings of Facts and Recommendations.
[121] Appeal to the Commissioner's Findings of Facts and Recommendations at 2-3.
[122] *Id.*

open to the defendant."[123] Smith is unable to demonstrate an IAC claim here because Trial Counsels' advice was not objectively unreasonable.

By signing the plea agreement, Smith gained the opportunity to receive the intensive mental health treatment that he sought.[124] Further because of the plea, the State did not obtain expert testimony that contradicted Smith's testimony that he was suffering from mental illness at the time of the killing.[125] Trial Counsel also advised that by accepting responsibility Smith could possibly be benefited in future proceedings.[126] Smith expressed that he did not wish to put his family through trial and, because of the plea, he did not have to.[127] Smith admitted that he wanted to take the plea because it was in his best interest.[128] Additionally, the State did not seek to have Smith declared as a habitual offender because of the plea, which is a motion they could have (and likely would have) submitted had Smith gone to trial. Smith benefitted from the plea agreement and Trial Counsel were not ineffective for suggesting he accept it. Based on the record, the Court finds it was ultimately Smith's decision to take the plea, and he is bound by his decision.

---

[123] *Hill v. Lockheart*, 474 U.S. 52, 56 (1985).
[124] "By entering into the plea of guilty but mentally ill, Smith was transferred and held at the Delaware Psychiatric Center for over two years receiving mental health treatment." *Smith*, 2023 WL 905909, at *15; D.I. 74 at 19-20.
[125] D.I. 74 at 17-18.
[126] June 29, 2023, Evidentiary Hearing Tr. at 45-46.
[127] D.I. 74 at 20.
[128] D.I. 24.

Consequently, Smith's IAC claim based on the fact he gained no benefit from the plea lacks merit.

For the foregoing reasons, Smith has failed to establish a basis for postconviction relief pursuant to Rule 61.

## V.    CONCLUSION

**WHEREFORE**, after careful and *de novo* review, the Court accepts and **ADOPTS** the Commissioner's Report,[129] and Robert Smith's Motion for Postconviction Relief is **DENIED.**

**IT IS SO ORDERED**.

/s/ Jan R. Jurden
Jan R. Jurden, President Judge

oc:    Prothonotary
cc:    Andrew J. Vella, Esquire
       Edward C. Gill, Esquire
       Robert L. Smith, (SBI# 00186178)

---

[129] *See* Super. Ct. Crim. R. 62(a)(5)(iv) ("A judge may accept, reject, or modify, in whole or in part, the findings of fact or recommendations made by the Commissioner.").